692

## CITY OF AUSTIN v. NELSON.
### No. 7628.

Court of Civil Appeals of Texas. Austin.
Nov. 4, 1931.

J. Bouldin Rector, A. L. Love, and Geo. E. Shelley, all of Austin, for appellant.

Hart & Patterson, of Austin, for appellee.

BLAIR, J.

This litigation arose out of the following facts: Section 1 of an ordinance of the city of Austin makes it unlawful for any person to erect, maintain, and operate any gasoline filling station within its corporate limits without first obtaining a permit from the city council. Section 2 defines the term "gasoline filling station" as used in the ordinance. Section 3 reads as follows: "That in granting or refusing the permit provided for in Section 1 of this ordinance, the City Council shall take into consideration the place where such filling station is proposed to be established, its contiguity to other buildings and residences, the explosive character of the gasoline and oils to be used or sold at such filling station, the location of public buildings, schools and places of public resort with reference to the location of such filling station, the character and condition of public traffic on the streets immediately contiguous and in the neighborhood of such proposed station, the hazards presented by the use of the sidewalks as a means of ingress and egress to such filling station, the liability of such filling station to become a nuisance or offensive to the inhabitants or occupants of buildings or residences adjacent thereto or in the neighborhood thereof, the length of time that existing filling stations have been in operation and the consent to or acquiescence in and location by the occupants or owners of the adjacent buildings or residences."

Section 4 prescribed the penalties for violation of the ordinance.

Appellee applied to the city council for a permit to erect, maintain, and operate a gasoline filling station on his property at the intersection of Rio Grande and Nineteenth streets, the station to be erected under the usual, ordinary, proper, and reasonable regulations and directions of the city council with respect to plans and specifications, and the kind and character of material; and to be constructed in accordance with the usual and customary regulations for protection against hazards of the filling station business; and in all respects and details complying with

the rules and regulations of the city of Austin for the erection and maintenance of a gasoline filling station. At a regular meeting of the city council, the application was "read and referred to the Safety Committee for their recommendations." This committee was composed of the captain of traffic police, the fire chief, the fire marshal, and the city engineer. The captain of traffic police made a written report of his investigation to the city engineer, and recommended that the permit be not granted because the intersection of the two streets in question was irregular and "on a sloping hill" and "detrimental to traffic, and creates a hazard to a certain degree * * * due to the street car line being on Rio Grande, and the narrow width of Rio Grande north of 19th and the destruction to the view of traffic which is going east on 19th, turning north on Rio Grande, * .* * the hazard would be created in cars entering and leaving the station." The fire chief and fire marshal made the following report of their investigation to Adam R. Johnson, city manager: "We cannot recommend the granting of this permit, as the location is in a strictly residential district, and that it is a recognized fact that where gasoline is handled or stored, that there always exists a fire hazard as well as the chance of an explosion, even with the best of approved appliances. We do not think that this type of business should be carried on in a district that is strictly residential."

The city engineer made the following report to Adam R. Johnson, city manager: "As a member of the Safety Committee I do not recommend the granting of a permit for a filling station at the northeast corner of Nineteenth and Rio Grande Streets on account of the increased hazard which will be caused by the proposed use of the property."

On May 22, 1930, the chief clerk of the city of Austin wrote appellee as follows: "This is to advise that your application to erect gasoline filling station on Lot 6, Outlot 23, Division 'D', was read at the Council meeting this morning, and, as is the rule in such matters, same will lie over for one week before being acted upon."

On May 29, 1930, the city council passed the following order: "The Mayor laid before the Council reports of the Safety Committee upon the application of J. H. Nelson to erect a gasoline filling station at the northeast corner of Nineteenth and Rio Grande Streets, and Councilman Pannell moved that in view of the adverse report of said Committee, permit for said gasoline filling station be denied. Motion was seconded by Councilman Steck, and same prevailed by the following vote: Ayes, Mayor McFadden, Councilmen Pannell, and Steck, 3; nays, none; Councilmen Mueller and Reed absent."

On May 29, 1930, the chief clerk wrote appellee as follows: "The City Council, at its meeting today, voted to deny your application for a filling station at 19th and Rio Grande Streets on account of same being in a residential district, and also the hazard to traffic that would be created at this point."

Upon receipt of this notice, appellee instituted this suit for a mandatory injunction to require the city council to issue him a permit to erect, maintain, and operate a gasoline filling station on his lot of land at the corner of Rio Grande and Nineteenth streets, and to perpetually restrain and enjoin the city of Austin, its officers, agents and employees, from interfering in any manner with appellee or his agents and employees in the construction, maintenance, and operation of the proposed gasoline filling station, alleging: (a) That the refusal of his permit under the facts pleaded was arbitrary, and constituted an unfair and unjust discrimination against him; and (b) that the ordinance in question deprived him of his property without compensation, and took it without due process of law, and denied him equal protection of law, in violation of both federal and state Constitutions.

The trial was to the court without a jury, and the court found and concluded: (a) That the city council acted arbitrarily in refusing appellee's permit, and was guilty of an unfair and unjust discrimination against him under the facts pleaded and proved; and (b) that the ordinance was invalid on its face, in that it authorized and empowered the city council to prejudge and declare a legitimate business a nuisance per se without regard to whether it was so in fact, and before the business had come into existence; and because such ordinance deprived appellee of the lawful use of his property without due process of law; and appellee was awarded a permanent injunction against the city of Austin and its officers, servants and agents, from interfering in any manner with appellee or his agents, servants and employees, in the erection, maintenance, and operation of the proposed gasoline filling station in compliance with all the legal and valid building ordinances of the city of Austin; hence this appeal.

On the issues of whether in refusing appellee's permit the city council acted arbitrarily and unfairly and unjustly discriminated against him, the trial court made the following findings of fact:

"The Court finds as a fact that the defendants, acting as City Councilmen of the City of Austin arbitrarily refused the application of the plaintiff, J. H. Nelson, for a permit to erect and operate a filling station on his property at the Northeast corner of West 19th and Rio Grande Streets in the City of Austin, Texas, * * * said property and premises being known as No. 606 West 19th Street, Austin, Texas.

"The Court further finds that said 19th Street between Congress Avenue and Rio Grande Street is a business street in that there are a number of filling stations and other business houses on said 19th Street between the points stated, and that the particular location on which the plaintiff seeks to erect a filling station is not more hazardous, but that the traffic hazards at said point are less than the traffic hazards at other places for which filling station permits have been granted.

"The Court further finds that the erection of a filling station on plaintiff's property at the intersection of said 19th and Rio Grande Streets according to the plans and specifications of said filling station submitted by plaintiff to the defendants will lessen the traffic hazards at the intersection of said streets.

"The Court further finds that the traffic at the corner of 19th Street and Rio Grande Street is not as heavy as the traffic at the corner of 19th and Congress Avenue, 19th and Lavaca Streets, and 19th and Guadalupe Streets, and that the City Council has granted permits for filling stations and other businesses at said street intersections.

"The Court further finds that the location at the corner of 19th Street and Rio Grande Street is not as near to residences and is not as near to public buildings, schools, or places of public resort, and that the traffic conditions contiguous to and in the neighborhood of the said lcation are not greater but less than at some other filling stations for which said City Council has granted permits.

"The Court further finds that the offset in Rio Grande Street does not seriously interfere or prevent persons using said street from observing other persons coming from opposite direction, and that the trees at said intersection, the grades of said streets nor the sidewalks seriously obstruct the view of traffic at said place, and that the traffic which now uses said streets, with such traffic as might be added thereto by the erection of a filling station thereon, would not constitute a public nuisance.

"The Court further finds that the motor vehicle using said filling station and entering at an angle as is generally done at other filling stations for which permits have been granted by the said City Council and the manner said filling station is to be construced, does not render this particular location any more hazardous than other filling stations similarly located, and that the erection and construction of said filling station in the manner proposed will lessen the traffic hazard at said location.

"The Court further finds that the erection of a filling station upon the location specified will not increase the fire hazards any more than does other filling stations generally located throughout the City of Austin and would not constitute this particular filling station a public nuisance, and that the erection and operation of a filling station at said location would not increase the violations of the traffic laws any more than other filling stations similarly located in the City of Austin, and that by reason of these facts the City Council of the City of Austin has been guilty of an unfair and unjust discrimination against the plaintiff."

"The Court further finds that Rio Grande Street is paved, has upon it a street railway and the property abutting thereon from 6th to 19th Street is occupied by residences, business and boarding houses; that the property abutting on 19th Street from Congress Avenue to Rio Grande Street is occupied by filling stations, other business houses, residences and boarding houses; and that plaintiff's property by reason of its location and close proximity to other filling stations and business houses on 19th street has a special business value and is of much greater value for business purposes than for residence purposes."

■ The city of Austin contends that the evidence shows that it did not act arbitrarily or discriminatorily in refusing appellee a permit; but to the contrary shows that the city council fairly and reasonably exercised its discretionary power to enforce the valid ordinance in question, in view of the facts and investigation upon which the action was based, and the rule that the exercise of such discretionary power by the city council is not subject to judicial review, in absence of clear evidence that such power has been abused. The question, however, is, not whether the city council is vested with discretionary power to enact and enforce a proper and legal ordinance regulating the issuance of permits to erect and operate gasoline filling stations, but is, assuming the ordinance to be valid, whether the city council in enforcing it and in refusing appellee's permit acted arbitrarily and discriminatorily, and that such action is reviewable by the courts is well settled. Such was the holding of the Supreme Court of the United States in Holden v. Hardy, 169 U. S. 366, 18 S. Ct. 383, 42 L. Ed. 780, where it is held: "But the exercise of the police power is subject to judicial review, and property rights cannot be wrongfully destroyed by arbitrary enactment. It was averred that the works would be so constructed as not to interfere with the health or safety of the people. No reasonable explanation for the arbitrary exercise of power in the case is suggested."

This case was cited and the principle followed by the Supreme Court of Texas in Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 653, 70 L. R. A. 850, where it is held as follows: "The power is not an arbitrary one, but has its limitations.

It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort, and convenience as consistently as may be with private property rights. As those needs are extensive, various, and indefinite the power to deal with them is likewise broad, indefinite, and impracticable of precise definition or limitation. But as the citizen cannot be deprived of his property without due process of law, and as a privation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purposes for which it exists, it may often become necessary for courts, having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of the power rests, and into the manner of its exercise, and if there has been an invasion of property rights under the guise of this power, without justifying occasion, or in an unreasonable, arbitrary, and oppressive way, to give to the injured party that protection which the Constitution secures. It is therefore not true, as urged by plaintiff, that the judgment of the legislative body concludes all inquiry as to the existence of facts essential to support the assertion of such a power as that now in question. If this were true, it would always be within legislative power to disregard the constitutional provisions giving protection to the individual. The authorities are practically in accord upon the subject. * * * .

"The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid. In others the question may depend upon their operation upon particular persons or conditions of fact which cannot be known to the court until made to appear by evidence. Their effect may be just and reasonable in general, but in particular instances may be arbitrary and oppressive to the extent of invading fundamental rights."

Again, in the cases of Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; City of Texarkana v. Reagan, 112 Tex. 317, 247 S. W. 816; and Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 813, the Supreme Court held in substance that, before the state or a municipality in the exercise of police power could find or declare a building or business a nuisance per se, or that by use or operation it became a nuisance so as to prohibit its maintenance or operation, it must be so in fact; that whether a business or its operation was a nuisance per se, or a nuisance depending on its operation, is a justiciable question, determinable only by courts of competent jurisdiction; and that the burden of proof as to whether a building or business was a nuisance per se, or by operation, was on the city in an action to enjoin it from declaring and treating such building or business as a nuisance; the court holding in the last case cited as follows: "It can only become a nuisance by the use to which it is put or the state of repair in which it is maintained; but as to whether or not it is, even in those events, a nuisance is a justiciable question, determinable only by a court of competent jurisdiction. The mere declaration of the city commissioners that the building or its use constitutes a nuisance does not make it so. * * * The right of abatement is made to rest alone upon the findings of the city commissioners. They are made court, jury, and executive authority, all in one. * * * Such arbitrary authority cannot, under our form of government, be conferred upon the city commissioners. A citizen's property, not a nuisance within itself or under the common law, cannot be destroyed without the judgment of a court finding that it is in fact a nuisance. The opinion of the city commissioners that the property of plaintiffs in error is a nuisance is not due process. It is not process at all. It has no more vitality than the opinion of other citizens as against the consent of plaintiffs in error. * * * In this proceeding the burden is on the city to allege and establish the contention that the building involved is in fact a nuisance."

We followed this principle of law in the recent case of City of Austin v. Deats (Tex. Civ. App.) 32 S.W.(2d) 686 (writ of error refused), and in which we held that the city council acted arbitrarily and unfairly, and unjustly discriminated against Deats in refusing to grant him a permit to erect a gasoline filling station on his lot at the intersection of Rio Grande and Nineteenth streets, directly across the street from where appellee's lot here involved is located; and the evidence on the issues of whether the city council acted arbitrarily and discriminatorily in this case is more fully developed and is much stronger than in the Deats Case.

In substance, the numerous cases cited in appellee's brief hold that, while it is true that a city council has the right to enact and enforce in a lawful manner proper regulatory ordinances for public health, safety, and comfort, still it is equally true that courts may review unwarranted and arbitrary interference with lawful property rights or business by a city council under the guise of enforcing police regulations for the public health, safety, and comfort; and that the city council, in the exercise of its police power with respect to declaring a business a nuisance, must perform the duty in a reasonable manner and in conformity to constitutional safeguards relating to private property rights, and so as to give the injured party that protection which the Constitution secures.

The city council adjudged appellee's proposed gasoline filling station to be a nuisance per se before it came into existence, and refused a permit for its erection. No zoning ordinance prohibited its erection at the location in question. The plans and specifications and material to be used were admitted to be in compliance with all building rules and regulations required for gasoline filling stations. The city council had issued permits for similar stations in numerous similar locations throughout the city. In allowing or disallowing permits for filling stations, Mayor McFadden testified, as follows: "In passing on these applications, there has been no official action by the council, separating the city into residential districts in which they will not grant permits, and others that they have termed 'quasi business locations,' as you say, and grant permits there, and that that is the rule or test in the council's mind. There has been no official action. That is a matter of discretion with us, or we claim it to be. We have designated actually in the minds of the council, certain streets that we call business streets, and other certain streets, or locations that we call residence sections. That is true. And, that is the underlying principle upon which we either permit or decline a permit for a filling station."

This "unofficial action" on the part of the city council, regardless of their good intentions, cannot be upheld, and similar action on the part of the city council of San Francisco was condemned by the Supreme Court of the United States in the case of Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, as follows: "For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

The following and numerous other authorities hold that gasoline filling stations erected according to modern approved methods, like the one in question was proposed to be erected, are not nuisances per se, that their erection in a residence district does not constitute a nuisance per se, and that under the Constitution arbitrary power cannot be conferred upon a city council to declare a filling station a nuisance, unless it is so in fact. They further hold that a city council may by reasonable ordinance establish zoning districts or define how gasoline filling stations may be constructed and operated, "but arbitrary power to allow a gas filling station on one man's property and disallow it to another, without any definite rule by which the city council is to be governed, cannot be conferred, for this would be to give it power to deny equal rights to all the citizens." Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091,

1092; City of Electra v. Cross (Tex. Civ. App.) 225 S. W. 795; Marshall v. City of Dallas (Tex. Civ. App.) 253 S. W. 887; Gulf Refining Co. v. Dishroon (Tex. Civ. App.) 13 S. W.(2d) 230.

The city engineer admitted that appellee's station was to have been erected subject to the usual, ordinary, proper, and reasonable regulations and directions of the city council with respect to plans and specifications, and the kind and character of material; and to be constructed in accordance with the usual regulations for protection against fire and traffic hazards, and in all respects and details complying with the rules and regulations of the city of Austin for the erection and maintenance of a gasoline filling station. The evidence is undisputed that the city council has heretofore issued permits for the erection and where there are now being operated filling stations of similar character at points on Nineteenth street near appellee's location, and at points throughout the city of Austin, which create greater traffic hazards than appellee's station would create; and that appellee's station would create no greater fire hazard than the other stations have created with respect to their locality. Clearly this evidence shows that the city council unfairly and unjustly discriminated against the business of appellee. In fact, there was much positive testimony that the erection and maintenance of appellee's station in the manner proposed would relieve traffic hazards at that point instead of increasing them; and the trial court's finding that traffic hazards would be decreased is fully supported by the evidence. At most, the city's testimony only showed that traffic hazards would be increased "to a degree," or slightly increased, and that "where gasoline is handled or stored, there always exists a fire hazard as well as the chance of an explosion." These same conditions even to a greater degree were shown to exist as to other points on the same street near appellee's location and at other similar locations where the city council had issued permits; and that this character of testimony was admissible and material as showing discrimination was settled in the Deats Case, supra.

In the recent case of Continental Oil Co. v. City of Wichita Falls, by the Commission of Appeals, 42 S.W.(2d) 236, it was held that the finding of the trial court that the "extra hazard to school children or pedestrians was not material" was binding upon the appellate courts; and the fact that a filling station in a purely residential district would depreciate the values of the residential property or create a fire hazard "no more than would necessarily" follow in similar locations where no zoning ordinance existed would not authorize a denial of a permit for the filling station any more than for any other lawful business.

■■ Nor is there any basis for the contention that, because the streets at the point in question approached each other irregularly, and because of a slight slope in the ground, there was a basis for distinction or classification between the location of appellee's station and other stations. The evidence was undisputed that, with the exception of the streets being slightly narrower at appellee's location, other locations were similar, and that violation of traffic rules in egress and ingress to the station would be the same at all locations. So there could be no basis for a different classification of appellee's property in these regards, even if the ordinance permitted it. Or, as was held by the Supreme Court of the United States. in Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 238, 73 L. Ed. 483, there must be some substantial difference to justify treating one person's property differently from another's property of the kind, and mere difference is not enough, but the classification must rest upon some reasonable and just difference and related to the act or thing with respect to which the discrimination is made, and "can never be made arbitrarily and without any such basis."

In view of our above holding, the constitutionality of the ordinance need not be passed upon, and the trial court's judgment will be affirmed.

Affirmed.