**GROUND WATER CONSERVATION DIST. NO. 2 et al., Appellants,**

v.

**J. M. HAWLEY, Executor, Appellee.**

No. 6681.

Court of Civil Appeals of Texas.

Amarillo.

June 3, 1957.

Rehearing Denied Sept. 9, 1957.

Boyer & Lemon, Perryton, Lovell, Lyle & Lorance, Dumas, Graves, Dougherty & Greenhill, Austin, for appellants.

Adkins, Folley, McConnell & Hankins, Amarillo, for appellee.

PITTS, Chief Justice.

Plaintiff, J. M. Hawley, independent executor and trustee of the estate of W. H. Taylor, deceased, filed suit as provided for in Section F of Article 7880–3c, Vernon's Ann.Civ.St., against defendant, Ground Water Conservation District No. 2, North of the Canadian River, with Gaston Wells, Harlan Hawk, R. V. Converse, Luther Browder and Robert Thompson, directors of the said conservation district, seeking to have a contiguous body of land consisting of about 12,105 acres, owned by the said Taylor estate, excluded from the said water district after the said Board of Directors for the district had denied plaintiff's application for exclusion thereof as a result of a hearing duly had before the said Board. After the institution of the suit and before the trial, L. R. Conner, acting for himself and all others situated as he was, intervened in the suit claiming an interest in the matters to be litigated because he owned a 300 acre tract of grazing land within the said district, which had been denied exclusion therefrom by the said Board for the sole reason that his said tract of land contained less than 640 acres. The parties will be here referred to as they were in the

trial court, that is, appellee as plaintiff, and appellants as defendant and intervenor.

Upon hearing all parties without a jury the trial court granted the relief sought by plaintiff and rendered judgment excluding all of plaintiff's land from the said district, enjoining the district and its Board of Directors from asserting any jurisdiction whatsoever in and over the said land and denying intervenor any relief, from which judgment defendant and intervenor both appealed and both perfected appeals to this Court and have filed separate briefs. Intervenor, joined by defendant, contends that Section A(9) of Article 7880–3c, upon which plaintiff relies for recovery and upon which such recovery was granted plaintiff by the trial court, is unconstitutional. Defendant further contends that the trial court erred when it enjoined the district and its Board, contrary to the provisions of the statute, from asserting any jurisdiction over plaintiff's land and plaintiff agrees that the trial court's judgment should be reformed and modified so as to enjoin the district and Board thereof from asserting any jurisdiction over the land except to exercise such control as that given the district and its Board by the provisions of the statute but the trial court's judgment should be otherwise affirmed. Defendant charges further that the trial court erred in excluding plaintiff's land from the district as grazing land because such land is not being used exclusively for grazing land as provided for and required under the provisions of Section A(9) of Article 7880–3c as amended.

■. We shall first consider the constitutional question. Section A(9) of Article 7880–3c as amended provides that grazing land in tracts of not less than 640 acres shall be excluded from the water conservation district upon petition filed with the proper authority and a proper showing made, in which event such a tract of land "shall not be liable for the bonded indebtedness of such District," which has levied a property tax to retire its bonds. No provision is made by the Act for excluding grazing land

in tracts smaller than 640 acres within the district, making such Act apply only to larger tracts of grazing land. It is conceded that plaintiff is seeking to have his tract of land excluded from the district on the grounds that it is one contiguous body of grazing land containing more than 640 acres. Intervenor and defendant contend that the said section of said Article is unconstitutional because it in effect constitutes class legislation favoring large land owners as against small land owners and is therefore arbitrary, unjust and unreasonable.

The said Conservation District is composed of all or portions of the Texas counties of Dallam, Hansford, Hartley, Hutchinson, Lipscomb, Moore, Ochiltree and Sherman. The evidence in the case is presented by exhibits introduced, by agreed stipulation of facts and in some instances by agreed stipulation as to what testimony certain witnesses would give if they were present and gave testimony. It was stipulated by agreement that plaintiff was the fee simple owner of the said contiguous tract of land consisting of approximately 12,105 acres, subject to any outstanding valid oil and gas leases and pipeline easements; that there are 14 producing gas wells located at various places on the said tract of land as shown by a map introduced in evidence with such wells being connected with pipelines crossing the said land, which is all unbroken sod land that has never been cultivated but is grass ranch land used for pasture in grazing cattle and horses thereon; that part of the land is fenced and no water is produced thereon except for domestic and stock raising purposes. It was likewise stipulated by agreement that intervenor, L. R. Conner, is the fee simple owner of his 300 acres of land included within the district; that such is ranch land which has never been cultivated but is unbroken sod land with native grass thereon and being used for pasture in grazing cattle and horses thereon; that the said land has no improvements thereon except a fence around it and a small windmill and no water is being produced on it except for domestic

and stock raising purposes; that the land has no oil, gas or other mineral production on it and there has never been any such production on it; that the said water district has assessed an ad valorem tax against intervenor's said land in the amount of 5¢ per $100 valuation and such taxes have been paid; that there are numerous other land owners situated similarly to intervenor in that they also own tracts of land consisting of less than 640 acres located within the district subject to the tax levied and their land is also unbroken ranch land that has never been cultivated but used for grazing purposes and that no water has been produced on the said land except for domestic and stock raising purposes and there is no oil, gas or other mineral production on such lands. The record reveals by exhibits introduced that intervenor had previously sought by petition duly filed to have the Board of Directors of the said district to exclude his said 300 acres of grass land from the said district but such petition was denied by the Board for the sole and only reason that intervenor's tract of land contained less than 640 acres.

According to the agreed stipulations there is no difference in the topography or the use being made of plaintiff's large tract of land and intervenor's smaller tract of land except that plaintiff's large tract of land has 14 producing gas wells with connected pipelines on it and intervenor's smaller tract of land has no mineral production on it. Yet a careful examination of that section of the Article being protested reveals that the same authorizes the exclusion of grazing land in tracts of not less than 640 acres and exempts the owner thereof from "liability for the bonded indebtedness of the district" while no provision is made for excluding a smaller land owner of the same kind of grazing land from the district or exempting him from liability of the bonded indebtedness. Under the provisions of the said section of the said Article a short section of grazing land consisting of 639 acres or less located within the district can not be excluded from the said district but must be liable for the property tax assessed to care for the bonded indebtedness of the district, while an adjoining section or tract of grazing land consisting of 640 acres or more also within the district can be excluded from the said district and be exempt from the tax levied and the bonded indebtedness of the district when there is no difference in the two tracts of land or their use other than the former tract is one or more acres smaller than the latter tract. In our opinion such is a discrimination by legislative act between the larger land owner and the smaller land owner and we find no basic reason given for such discrimination.

■ Courts must preserve the equal protection of people given under the provisions of the law, even when such a law is being administered by administrative boards. In order to be valid, a discrimination between persons must have a reasonable basis. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022. To justify treating one person's property different from another person's classification must rest upon some reasonable and just difference related to the act or thing with respect to which the classification is made and can never be made arbitrarily and without any such basis. City of Austin v. Nelson, Tex.Civ.App., 45 S.W.2d 692. Article I, Section 3, of the Vernon's Ann.St. Texas Constitution guarantees to all persons equality of rights. Under such provision the Legislature has the power, however, to adopt any classification it sees fit, provided there is any reasonable basis for such classification. Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570, 574. A State Constitution is not always a grant of power but sometimes operates solely as a limitation of power. However, the State Legislature has the power to make any classifications and exemptions which are not arbitrary and unreasonable. Watts v. Mann, Tex.Civ.App., 187 S.W.2d 917 (writ refused). In determining whether a classification is arbitrary and unreasonable the Texas Supreme Court recently held that

the test is whether there is any basis for the classification which could have seemed reasonable to the Legislature. San Antonio Retail Grocers v. Lafferty, Tex., 297 S.W.2d 813. In considering the Act here involved, we find no reasonable basis for excluding any grazing land in tracts of 640 acres or more and omitting therefrom the exclusion of smaller tracts of the same kind of grazing land. Neither do we find any basis therefor which could have seemed reasonable to the Legislature for making such a distinction.

In our opinion Section A(9) of Article 7880-3c as amended contravenes and violates the "equal rights" provisions of Section 3 of Article I of the State Constitution. While plaintiff contends that the said section of the said Article here involved is not a tax exemption act and does not therefore contravene or violate the "equal and uniform" tax provisions of the State Constitution. However, it appears that the said section of the said Article is in effect a tax exemption act and that plaintiff seeks to have his land excluded from the said district primarily to avoid payment of the property tax being levied to retire the bonded indebtedness of the district.

■ ■ The Legislature does not have the power to impose penalties or restrictions upon one class of citizens or one class of property to the exclusion of others without doing violence to the equal rights provisions of the law and the State and Federal Constitutions unless such classification is based upon some substantial reason and just grounds which bear a reasonable relationship to the purposes or object of such legislation, and both our State and Federal Courts have many times so held. For the reasons stated it is our opinion that Section A(9) of Article 7880-3c is unconstitutional. However, the Act itself provides that in such event, the remainder of the Article and the Act shall not be affected but shall be left intact, consequently it is our opinion that the remainder of the Ar-

ticle and Act is not in any way here invalidated.

■ Defendant also charges in Point 3 that, assuming the said section of the said Article is constitutional, the trial court erred in granting plaintiff the relief sought because his said land is not being used exclusively for grazing purposes as required by the provisions of Section A(9) of Article 7880-3c as amended. Although we think the appeal has already been properly disposed of, we are considering this point also. The said section as amended provides in part as follows:

"'Grazing land' shall mean land in tracts of not less than six hundred and forty (640) acres used exclusively for grazing purposes on which water is being produced for domestic and stock raising purposes only. Grazing land as defined above within the boundaries of an underground Water Conservation District shall, upon petition to the directors of the District, be excluded therefrom and shall not be liable for the bonded indebtedness of such District; provided that such land shall be excluded only so long as such conditions continue to exist. * * *"

The remainder of the said amended section is lengthy and provides for taking excluded land back into the district if changes in the same justify such action, in which event the said land "shall thereafter be subject to taxation and bonded indebtedness as any other land within the District." If there be those who are not satisfied with the actions of the directors of the District, they may resort to a proper court under the provisions of Section F of the Act for relief.

Plaintiff concedes that in order to have his said land excluded from the district he must show:

(1) That his tract of land contains not less than 640 acres;

(2) That there must not be water produced upon the land except for domestic and stock raising purposes; and

(3) That the said land must be used exclusively for grazing purposes.

Plaintiff contends that if these three conditions exist he is entitled to have his land excluded from the district. In considering the third condition previously expressed plaintiff concedes that if a strict construction of the use of the word "exclusively" is observed, he is not entitled to have his land excluded from the district because of the 14 producing gas wells located upon his land causing the said land to be used for purposes other than grazing. But plaintiff contends that a strict construction should not be given the use of the word exclusively in construing the Statute.

Defendant takes issue with plaintiff in the latter statement made and contends that, according to the ordinary use of the word "exclusively" and according to the facts stipulated by the parties, plaintiff's said land is not being used exclusively for grazing purposes and therefore should not be excluded from the district. A portion of the agreed stipulation provides that:

"The parties to the suit will stipulate that the land covered by the plaintiff's petition contains approximately twelve thousand one hundred and five acres of land in one contiguous unbroken tract and that the plaintiff is the fee simple owner of the entire tract of land subject to any outstanding valid oil and gas leases and pipeline easements and that this tract of land is ranch land consisting of native grasses and is unbroken sod land and land which has never been plowed or cultivated. It is pasture land and is pastured by cattle and horses during most of the months of the year. Parts of it is fenced. No water is being produced on the land unless it be for domestic and stock raising purposes only and there is no water well situated thereon which produces one hundred thousand gallons of water per day. No water is produced for any irrigation, municipal or industrial purposes. It is further agreed that there are on file certain instruments in the office of the County Clerk of Moore County which purport to lease the land in question for oil and gas and such leases contain, in substance, the usual provisions that the lessor grants to lessee the right to use the surface of the land to produce oil and gas, to lay pipelines, telephone and telegraph lines, power stations, to build tanks and other structures and roads thereon which may be necessary to produce, save, treat, take care of and market oil and gas and that the lessee shall have the right, free of cost, to use gas, oil and water produced on said land for all of lessee's operations thereon except water from lessor's wells. This does not in any way stipulate that such instruments are valid and subsisting at this time nor by this stipulation do we stipulate that the lessees are at this time exercising any of the rights granted by said instruments except that there are fourteen producing gas wells thereon and these wells are connected to pipelines which cross plaintiff's property. The fourteen gas wells and the connecting pipelines are shown in their approximate positions on Plaintiff's Exhibit Number One, which is offered in evidence."

Defendant contends that plaintiff's land is not being used "exclusively for grazing purposes" because there is located at various places on the said land 14 producing gas wells, connected with pipelines which cross plaintiff's land and which are being used in producing, saving, treating, caring for and marketing the gas production and because the land is under mineral leases granting the lessee the right to use the surface of the land in producing and marketing other minerals therefrom in addition to producing and marketing gas from the 14 producing wells.

Plaintiff concedes tht the word "exclusive" is defined in the dictionary as meaning "sole, shutting out all others, single, singly devoted," but he does not think such a definition should be applied to the use made of the word in the section of the legislative act here under consideration. It appears from his argument that plaintiff believes that the use of the word "exclusively" in the act means substantially or predominantly but he does not cite satisfactory authorities in support thereof. Defendant contends that the word "exclusively" is defined as meaning "single, sole, as exclusive agent, exclusive jurisdiction, singly devoted, leaving out all others * * *," and that such is the well recognized common use and general meaning of the said word. There seems to be no controversy about what the word literally means.

An examination of the admitted facts reveals that plaintiff's land was being used for grazing purposes, but, giving the word "exclusively" its usual meaning, considering the context and the subject matter involved in the statutory provision being considered, it is our opinion that the said land was not being used exclusively for grazing purposes, since there are 14 producing gas wells admittedly located at various places on the land with pipelines connected to the said wells and crossing the land in question for use in producing, saving, treating, caring for and marketing the gas and that the surface of the said land had been by leases recorded dedicated by plaintiff to the lessee to be used in further producing and marketing not only the gas being then produced from the 14 gas wells but dedicated also for further use in developing, producing and marketing oil as well as gas. The lessee has further surface rights to build more pipelines, telephone and telegraph lines, power stations, tanks, roads and to use, free of cost, any gas, oil and water produced on the said land the lessee's operations thereon except that lessee must develop his own water and not use water from plaintiff's wells, but under the facts lessee can use for his own operations any amount of either gas or water needed for his mineral operations, in which event water may be used by lessee in any quantities for purposes other than domestic and stock raising in violation of the provisions of Section A(9) of Article 7880–3c. For the reasons stated, defendant's Point 3 is sustained.

Under the record before us and for the reasons stated, the judgment of the trial court is reversed and judgment is here rendered denying plaintiff any recovery. Reversed and rendered.