**Sue Akers CAMERON, Petitioner,**

v.

**Paul Archibald CAMERON, Respondent.**

No. C–8.

Supreme Court of Texas.

Oct. 13, 1982.

Rehearing Denied Nov. 17, 1982.

---

6. We do not discuss the Co-op's Fourth and Sixth Points of Error in this per curiam.

Harris, Cook & Browning, Larry G. Hyden and Scott T. Cook, Corpus Christi, for petitioner.

Charles R. Cunningham, Corpus Christi, for respondent.

POPE, Justice.

The questions presented concern the trial court's division of military retirement pay and United States Savings Bonds between divorcing spouses in Texas. The property was acquired in states that do not have a community property system. The trial court awarded the wife thirty-five percent of the gross military retirement funds received in the future by the divorced husband and fifty percent of the United States Savings Bonds. Considerable other property was divided about which there is no dispute. The court of civil appeals reversed the judgment in part and held that the retirement pay and savings bonds, acquired by the spouses in a common law property state, were the husband's separate property and, thus, not subject to division. 608 S.W.2d 748. We reverse the judgment of the court of civil appeals with respect to the military retirement pay; we reverse the judgment of the court of civil appeals and affirm the trial court's judgment dividing the savings bonds.

Paul Cameron joined the United States Air Force on June 22, 1954. While in the military, Paul married Sue Akers in Midland, Texas, on September 29, 1957, and the couple immediately moved to California. The Camerons remained in California, a community property state, for only three months. During the balance of Mr. Cameron's military service, the two lived in Arkansas, Indiana, Maryland, Nebraska, Ohio and Oklahoma, all of which observe the common law property system. The Camerons' move to Texas in August 1977 coincided with Paul's retirement from the Air Force. At the time the divorce suit was filed in 1978, both spouses lived in Texas.

## I. THE MILITARY RETIREMENT PAY

In awarding a fraction of Paul Cameron's military retirement pay to his wife, the trial court followed a number of Texas decisions approving such a division upon divorce. *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977); *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); *Herring v. Blakeley*, 385 S.W.2d 843 (Tex.1965). While this cause was on appeal, the United States Supreme Court held that the supremacy clause of the United States Constitution, article VI, precludes a state court from dividing military nondisability retirement pay on divorce. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In the wake of *McCarty*, we held that the supremacy clause effectively foreclosed the division of military retirement benefits under Texas community property laws. *Trahan v. Trahan*, 626 S.W.2d 485, 487 (Tex.1981); *see also In re Marriage of Jacanin*, 124 Cal.App.3d 67, 177 Cal.Rptr. 86, 87–88 (Ct.App.1981); *Dedon v. Dedon*, 404 So.2d 904, 905 (La.1981); *Hill v. Hill*, 291 Md. 615, 436 A.2d 67, 70 (1981).

Mrs. Cameron urged that we should remand the cause to afford the trial court an opportunity to increase her award from the community property as a means of offsetting her loss of thirty-five percent of the future retirement pay. The United States Supreme Court had also closed the door to that remedy. *McCarty*, 453 U.S. at 228–29 n. 22, 101 S.Ct. at 2739 n. 22; *see also Hisquierdo v. Hisquierdo*, 439 U.S. 572, 588, 99 S.Ct. 802, 811, 59 L.Ed.2d 1 (1979).

On September 9, 1982, the President signed into law the Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (1982). The purpose of the act was to reverse the effect of the *McCarty* decision. Under the act, a divorce

court may divide military retirement pay between the spouses in accordance with the law of the jurisdiction of that court. The act limits such division of retirement pay to periods beginning after June 25, 1981. *Id.* § 1002(a) [to be codified at 10 U.S.C. § 1408(c)(1)].

Paul Cameron served in the military for more than nineteen years of his twenty-one and a half year marriage to Sue Cameron. Under the act, Sue Cameron is entitled to receive a portion of Paul Cameron's retirement pay. The divorce decree, dated March 29, 1979, awards Sue Cameron "thirty-five percent (35%) of the gross present and future Military Retirement presently being received." Sue Cameron is entitled to recover that thirty-five percent, but not for the period from March 29, 1979 to June 25, 1981. Therefore, we affirm that part of the trial court judgment awarding Sue Cameron thirty-five percent of the military retirement pay, but only for the period beginning after June 25, 1981.

## II. THE U.S. SAVINGS BONDS

The court of civil appeals characterized the funds earned by Mr. Cameron in common law jurisdictions as his separate property and, through tracing principles, decided the bonds acquired with the common law funds belonged in his separate, Texas estate. As a part of Mr. Cameron's separate estate, the bonds, according to the court of civil appeals, could not be divested by the trial court. Sue Cameron seeks to uphold the trial court's disposition of the bonds by arguing that we should overrule our decision in *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977), or, alternatively, treat separate personalty differently than separate realty. Although we view the nature of the savings bonds acquired in common law jurisdictions in a different light than the court of civil appeals, we first address these arguments advanced by Mrs. Cameron.

### A. Eggemeyer Correctly States the Law

■ Since the early days of the Republic of Texas, Texas has carefully drawn a line between the separate and community property of spouses in an attempt to preserve the distinctions between and the integrity of the two classes of property. Any judicial divestiture of separate property would essentially disregard the constitutionally mandated distinction. At times pertinent to this action, the Texas Constitution has provided:

> All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife ....

Tex. Const. art. XVI, § 15. In interpreting this provision, the court in *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925), ruled that the constitution contained the exclusive definition of separate property and that the legislature could neither alter nor enlarge upon it. Section 3.63 of the Family Code authorizes a "just and right" division of the estate of the parties, but it does not provide authority for the transmutation of one spouse's separate property into the other spouse's separate property. Allowing a trial court to divest separate property from one spouse and award it to the other spouse as part of the latter's separate estate would impermissibly enlarge the exclusive constitutional definition of separate property. *See Eggemeyer, supra,* at 140.

■, In addition to this constitutional reason for disallowing the divestiture of separate property on divorce, the statutory construction of section 3.63, Tex.Fam.Code Ann., does not imbue our courts with the authority to divest separate property. The Fourth Congress of the Republic of Texas approved in 1840 an "Act adopting the Common Law of England ... and to regulate the Marrital [sic] Rights of Parties." 1840 Laws of the Republic of Texas, at 3–6, 2 H. Gammel, Laws of Texas 177–180 (1898). In defining separate and community property,[1] the congress decreed that land

---

1. Sec. 3. Be it further enacted, That neither the lands nor slaves which the wife may own, or to which she may have any right, title or claim at the time of her marriage, nor the

or slaves acquired *before* marriage or afterward by gift, devise or descent constituted separate property. All other marital acquisitions fell into the common or community estate of the spouses. One year later, the Fifth Congress of the Republic of Texas approved an act "Concerning Divorce and Alimony." The statute authorized a divorce court to "order a division of the estate of the parties . . . as shall seem just and right," and added, "that nothing herein contained shall be construed to compel either party to divest him or herself of title to real estate or to slaves." 1841 Laws of the Republic of Texas, An Act Concerning Divorce and Alimony § 4, at 20, 2 H. Gammel, Laws of Texas 484 (1898) (emphasis added); *see* McKnight, *Commentary on Sec. 3.63,* 5 Tex.Tech. L.Rev. 337–338 (1974). The divorce statute made clear it was "the estate of the parties,"—the common property—that the court had the power to divide. In contrast, the congress directed that real estate and slaves—separate property as

defined one year earlier by the Fourth Congress—should remain inviolate on divorce. The Fifth Congress, thus, forbade the divestiture of a spouse's separate property, as then defined, by the courts on divorce. Consequently, division of property by a divorce court was limited to the community estate.

The phrase "estate of the parties" has been carried forward in Texas divorce laws and now appears in Tex.Fam.Code Ann. § 3.63(a). This court in *Eggemeyer, supra,* at 139, affirmed the construction that the phrase referred only to community property.[2] Four years after *Eggemeyer,* the 67th Texas Legislature amended section 3.63, but left undisturbed this court's decision that "estate of the parties" refers only to community property. In addition, the scheme enacted by the legislature in section 3.63(b) of the Family.Code builds upon the law that property acquired before marriage or afterward by gift, devise or descent cannot be divided by Texas courts.[3] To now hold that

---

lands nor slaves to which she may acquire, during the coverture, any right, title or claim, by gift, devise or descent, nor the increase of such slaves in each case, nor the paraphernalia as defined at Common Law, which the wife may have at the time of the marriage, or which she may acquire during the coverture as aforesaid, shall, by virtue of the marriage, become the property of the husband, but shall remain the separate property of the wife; Provided, however, That during the continuance of the marriage, the husband shall have the sole management of such lands and slaves.

Sec. 4. Be it further enacted, That all property which the husband or wife may bring into the marriage *except land and slaves and the wife's paraphernalia and all the property acquired during the marriage, except such land or slaves, or their increase, as may be acquired by either party, by gift, devise or descent,* and except also the wife's paraphernalia, acquired as aforesaid, and during the time aforesaid, shall be the common property of the husband and wife, and during the coverture may be sold or otherwise disposed of by the husband only; it shall be first liable for all the debts contracted by the husband during the marriage, and for debts contracted by the wife for necessaries during the same time; and upon the dissolution of the marriage, by death, after the payment of all such debts, the remainder of such common property shall go to the survivor, if the deceased have no descendant or

descendants; but if the deceased have a descendant or descendants, the survivor shall have one half of such common property, and the other half shall pass to the descendant or descendants of the deceased.

1840 Laws of the Republic of Texas, An Act to Adopt the Common Law of England—To Repeal Certain Mexican Laws, and to Regulate the Marrital [sic] Rights of Parties §§ 3, 4, at 4, 2 H. Gammel, Laws of Texas 178 (1898) (emphasis added).

2. The Arizona Supreme Court in construing its divorce statute providing for a "division of the property of the parties as to the court shall seem just and right," also determined that the phrase "property of the parties" referred only to the community property. *Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537, 541 (1952).

3. Amended section 3.63 now provides:

Section 3.63 Division of Property

(a) In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

(b) In a decree of divorce or annulment the court shall also order a division of the following real and personal property, wherever situated, in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage;

the "estate of the parties" encompasses separate as well as community property would thwart the intent of this most recent pronouncement by the legislature.

■ Section 3.63(a), moreover, authorizes a "division" of the parties' estate, but provides no authority for a court to "divest" a divorcing spouse's separate property. Castleberry, *Constitutional Limitations on the Division of Property Upon Divorce,* 10 St. Mary's L.J. 37, 48–55 (1978). As early as in the 1841 divorce statute discussed above, the Texas Congress drew a distinction between allowing courts to "order a *division* of the estate of the parties*" while at the same time forbidding them "to compel either party to *divest* him or herself of the title to real estate or slaves." 1841 Laws of the Republic of Texas, An Act Concerning Divorce and Alimony § 4, at 20, 2 H. Gammel, Laws of Texas 484 (1898) (emphasis added). The 1981 amendment to Tex.Fam. Code Ann. § 3.63 continues the use of the term "division" when addressing the courts' power to order a disposition of marital property. In *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960), this court recognized and explained the difference between a "division" of property and a "divestiture" of property. A division of the community is similar to a partition of property and "is not a divesting of title of either owner

> (1) property that was acquired by either spouse while domiciled elsewhere and that would have been *community property* if the spouse who acquired the property had been *domiciled in this state at the time of the* acquisition; or
> (2) property that was acquired by either spouse in exchange for real or personal property, and that would have been *community property* if the spouse who acquired the property so exchanged had been domiciled in this state at the time of its acquisition.

Tex.Fam.Code.Ann. § 3.63 (emphasis added). The Bill Analysis for H.B. 753 prepared for the House Committee on Judiciary stated:

> *Division of Property.* Two separate systems of marital property regimes exist in the various states: common law and community property. Each regime provides for the welfare and estate of both spouses upon dissolution of marriage. The end result is similar while the nomenclature is different. In community property states, like Texas, each spouse has legal title in property accumulated during the marriage. In common law

...." *Id.* at 377, 331 S.W.2d at 303. The division, we said, does not effect a conveyance or transfer of title; the transaction only dissolves the tenancy in common. One year later in *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961), we repeated our holding in *Hailey:*

> Under our laws, permanent alimony is not recognized, nor is a Texas court authorized to *divest* either spouse of his or her *title to separate property, Hailey v. Hailey,* Tex.Sup., 331 S.W.2d 299, but the wife, in the main, must look to the community property for her share of the material gains incident to an ill-starred marriage.

*Id.* at 193, 345 S.W.2d at 724 (emphasis added). Thus, the terminology utilized first by the Texas Congress and carried forward to the present day by the Texas Legislature reinforces our decision that separate property is not subject to divestiture by courts on divorce.

■ It is also suggested that separate property may be divested and granted to the non-owning spouse as an exercise of the police power. The Texas Legislature, however, has not seen fit to exercise this power in favor of divestiture of spouses' separate property on divorce. Presently, section 3.63(a) of the Family Code is silent on the

> states, the same property may belong to one spouse, but the other spouse is found to have acquired an equitable interest that can be vested upon dissolution of the marriage..
>
>     \*     \*     \*     \*     \*     \*
>
> Suggested solutions would be to allow Texas courts to find an equitable interest in separate property, or to allow the courts to consider as *community property* that property which would have been *community* had it been acquired by someone domiciled in Texas at the time of acquisition.
>
>     \*     \*     \*     \*     \*     \*
>
> Section 1. Amends Family Code, Section 3.63, to allow Texas courts to divide all property before them in a marriage dissolution suit which according to Texas law would be considered *community property* if the acquiring spouse had been domiciled in Texas at the time of acquisition.

House Comm. On The Judiciary, 67th Legislature Of Texas, Bill Analysis To H.B. 753, p. 1 (1981) (emphasis added).

courts' power to take one spouse's property and give it to the other on divorce. In comparison, the California statute concerning the disposition of property on divorce, Cal.Civ.Code § 4800, like Tex.Fam.Code Ann. § 3.63(a), neither expressly prohibits nor provides for divestiture of separate property on divorce. Yet the California courts have consistently refused to interpret the statute as authorizing its courts to divest spouses of their separate property. One California court has explained:

> The jurisdiction of the court with respect to property in a divorce action is found in section 137 et seq. of the Civil Code. As a general rule and subject to certain exceptions not material here, the power of the court is limited to a disposition of the community property and a court is without power to pass upon a dispute as to separate property or the disposition of the same.

*Roy v. Roy,* 29 Cal.App.2d 596, 85 P.2d 223 (Dist.Ct.App.1938); *accord, Machado v. Machado,* 58 Cal.2d 501, 375 P.2d 55, 58 (1962); *Fox v. Fox,* 18 Cal.2d 645, 117 P.2d 325, 326 (1941); *Simpson v. Simpson,* 80 Cal. 237, 22 P. 167, 168 (1889). As recently as 1981 when the Texas Legislature considered and substantially amended Tex.Fam.Code Ann. § 3.63,[4] it failed to assert any intention to use the police power it might have as a means of divestiture. We do not see, therefore, that the state has authorized the use of any power it might have to take separate property on divorce.

Texas property law contains a rich tradition of respect for the constitutional, Tex. Const. art. XVI, § 15, and statutory, Tex. Fam.Code Ann. § 5.01, boundaries between community and separate property. Our state's courts have steadfastly guarded these estates from, and have been alert to rectify fraudulent encroachment by one estate upon the other. *Land v. Marshall,* 426 S.W.2d 841 (Tex.1968); *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48 (1962); *Volunteer State Life Ins. Co. v. Hardin,* 145 Tex. 245, 197 S.W.2d 105 (1946). The integrity of each estate has been protected by

developed principles of law and accounting by which funds or assets may be traced. *Tarver v. Tarver,* 394 S.W.2d 780 (Tex. 1965); *Rose v. Houston,* 11 Tex. 324 (1854); *Love v. Robertson,* 7 Tex. 6 (1851). The law of reimbursement between separate and community estates of spouses at divorce has been recognized since an early date. *Rice v. Rice,* 21 Tex. 58 (1858); *see also Lindsay v. Clayman,* 151 Tex. 593, 254 S.W.2d 777 (1952); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935); *Schmidt v. Huppman,* 73 Tex. 112, 11 S.W. 175 (1889). A decision that would throw all separate and community property of the divorcing spouses into a hotchpotch so a trial judge could divide the mass without regard to when or how it was acquired would raze much of our developed community property law.

As we look beyond the boundaries of Texas, we find our holding in *Eggemeyer* that separate property may not be divested puts Texas in conformity with the law in six of the seven other community property states. In Arizona, "The court in pronouncing the decree of divorce had no authority to compel either party to divest himself or herself of the title to separate property." *Wiltbank v. Wiltbank,* 18 Ariz. 435, 162 P. 60, 61 (1917); *see also Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537 (1952); *Armstrong v. Armstrong,* 71 Ariz. 275, 226 P.2d 168 (1951); *Schwartz v. Schwartz,* 52 Ariz. 105, 79 P.2d 501 (1938); *Brown v. Brown,* 38 Ariz. 459, 300 P. 1007 (1931); *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (1966).

In California, the court may not assign the separate property of one spouse to the other, nor require one to pay the other any amount in lieu of an assignment or divestiture. *Fox v. Fox,* 18 Cal.2d 645, 117 P.2d 325 (1941). "[T]he power of the court to dispose of the property of the parties to a divorce action is limited to their community property. It is the general rule that the court has no jurisdiction to assign separate property of one spouse to the other ...." *Mitchell v. Marklund,* 238 Cal.App. 398, 47 Cal.Rptr. 756 (Ct.App.1965); *accord Reid v.*

---

4. *See* note 3, *supra.*

*Reid,* 112 Cal. 274, 44 P. 564 (1896); *Davis v. Davis,* 222 Cal.App.2d 691, 35 Cal.Rptr. 281 (Ct.App.1963); *Thomasset v. Thomasset,* 122 Cal.App.2d 116, 264 P.2d 626 (Dist.Ct. App.1954); *Barba v. Barba,* 103 Cal.App.2d 395, 229 P.2d 465 (Dist.Ct.App.1951); *Robinson v. Robinson,* 65 Cal.App.2d 118, 150 P.2d 7 (Dist.Ct.App.1944). The California rule may be summed up: "As a general rule and subject to certain exceptions not material here, the power of the court is limited to a disposition of the community property and a court is without power to pass on a dispute as to separate property or the disposition of the same." *Roy v. Roy,* 29 Cal. App.2d 596, 85 P.2d 223 (Dist.Ct.App.1938); *see also Machado v. Machado,* 58 Cal.2d 501, 375 P.2d 55 (1962); *McKannay v. McKannay,* 68 Cal.App. 701, 230 P. 214 (Dist.Ct. App.1924). In California, even the community property must be divided in equal parts rather than, as in Texas, fairly and equitably. Cal.Civ.Code §§ 4800, 4801.

The Idaho Supreme Court, interpreting that state's divorce laws, stated, "The court has the power to divide the community property between the parties, but has no power or authority to award the wife's separate property, or any of it, to the husband." *Radermacher v. Radermacher,* 61 Idaho 261, 100 P.2d 955 (1940); *see also Simplot v. Simplot,* 95 Idaho 239, 526 P.2d 844 (1974).

Nevada courts cannot divest separate property and award it to a spouse in fulfillment of the statutory power to make an equitable disposition of the marital property. *Stojanovich v. Stojanovich,* 86 Nev. 789, 476 P.2d 950 (1970); *Jacobs v. Jacobs,* 83 Nev. 73, 422 P.2d 1005 (1967); *Thorne v. Thorne,* 74 Nev. 211, 326 P.2d 729 (1958).

The New Mexico law regarding divestment of title parallels that of Nevada. *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980). Louisiana also maintains a distinction on divorce between a couple's community and separate estates. *See generally Curtis v. Curtis,* 403 So.2d 56 (La.1981); *Lane v. Lane,* 375 So.2d 660 (La.Ct.App. 1978), *writ denied,* 381 So.2d 1222 (La.1980); La.Civ.Code Ann. arts. 149, 155, 159, 2341, 2365, 2367, 2369, 2369.1. The Nevada, New Mexico, and Louisiana legislatures have imposed upon spouses a continuing legal duty to provide support for a divorced spouse through alimony. While prohibiting divestment for property settlements, those states expressly permit a transfer in discharge of the legislatively enunciated duty to provide support. *See* La.Civ.Code Ann. art. 160; Nev.Rev.Stat. § 125.150(3); N.M.Stat.Ann. § 40–4–7.B(1).

The State of Washington is the only community property jurisdiction that holds contrary to *Eggemeyer* and the rule in all other community property states. Even so, Washington permits divestment only in exceptional circumstances. *Morris v. Morris,* 69 Wash.2d 506, 419 P.2d 129 (1966); *Browning v. Browning,* 46 Wash.2d 538, 283 P.2d 125 (1955).

The National Conference of Commissioners on Uniform State Laws in the Uniform Marriage and Divorce Act has accepted the principle that separate property in community property states should not be subjected to divestment by a trial court on divorce. The recommended draft for community property jurisdictions affirmatively states that "the court shall assign each spouse's separate property to that spouse." [5] The

---

5.  [Section 307. Disposition of Property.] In a proceeding for dissolution of the marriage, legal separation, or disposition of property following a decree of dissolution of the marriage or legal dissolution by a court which lacked personal jurisdiction over the *absent spouse or lacked jurisdiction to dispose* of the property, the court shall assign each spouse's *separate* property to that spouse. It also shall divide *community* property, without regard to marital misconduct, in just proportions after considering all relevant factors including:

(1) contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(2) value of the property set apart to each spouse;

(3) duration of the marriage; and

(4) economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for a reasonable period to the spouse having custody of any children.

comment explains that the commissioners from community property states adhered to the distinction between community and separate property, and the draft provides only for the division of community property. Unif.Marriage & Divorce Act § 307 Commissioners' Comment, 9A U.L.A. 144 (1973).

In a broader context, Professor Marsh in his treatise, Marital Property In Conflict Of Laws 182 (1952), writes that "in none of the United States at the present time does either spouse acquire a marital-property interest in the property of the other owned at the time of marriage, whether movable or immovable." *Accord,* K. Gray, Reallocation Of Property On Divorce 127, 132 (1977). Section 257 of the Restatement Of Conflict Of Laws (Second) and its comment affirms the principle that a spouse gains no marital property interest in the pre-marital acquisitions of the other spouse by virtue of the marriage.[6]

The undercurrent of arguments to this court in support of the divestment of separate property is that Texas does not allow permanent alimony.[7] Section 3.59, Tex. Fam.Code Ann., authorizes support of a spouse only until a final decree. *See Eichelberger v. Eichelberger,* 582 S.W.2d 395, 402 (Tex.1979). The policy against permanent alimony is so strong that the Texas

Legislature has stated that the duty of support will be honored under the laws of other states except that the rule "shall not include alimony for a former wife." Tex. Fam.Code Ann. § 21.21; *see McElreath v. McElreath,* 162 Tex. 190, 228–229, 345 S.W.2d 722, 747 (1961).

One reason that Texas denies permanent alimony is that more than a century and a half ago, the state, along with Louisiana, took the lead to give wives equality with their husbands in the ownership of property they acquired during coverture. The common law recognized the wife's existence only through the husband, who upon marriage became the owner of the wife's property. Castleberry, *supra,* at 55. In addition, spouses share the gains of their marriage equally under our community property legacy from Spain. Common law jurisdictions are yielding to this equal system of marital property ownership. *See* K. Gray, *supra,* at 63–67, 132–133.

It is urged that we, by indirection, should resolve the problem of the state's lack of alimony laws by allowing our courts to divest a spouse of separate property and award it to the other spouse. In so doing, it is argued that we would be insuring the state that a worthy spouse[8] would receive

---

Unif. Marriage & Divorce Act § 307 *alternative B,* 9A U.L.A. 144 (1973) (emphasis added).

**6.** The Restatement (Second) provides:

TITLE D. MARITAL PROPERTY

Introductory Note: The term "marital property," as used in the Restatement of this Subject, means any interest which one spouse acquires, solely by reason of the marital relation, in the immovables and movables of the other spouse, apart from the expectancy of inheriting upon the death of the other.

§ 257. Effect of Marriage on Existing Interests in Movables

Whether as a result of the marriage one spouse acquires an interest in the movables then owned by the other spouse is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the movables under the principles stated in § 6. This state will usually be that where the other spouse was domiciled at the time of the marriage.

Comment:

a. The rule of this Section is of minor importance, since in no State of the United States does a spouse acquire any marital property interest, as defined in the Introductory Note to this Title, in the movables owned by the other spouse at the time of the marriage.

Restatement (Second) Of Conflict Of Laws § 257 (1971).

**7.** Texas is the only state that forbids an award of alimony. In 1980, Pennsylvania reformed its law to permit alimony, but at the same time, the state's reform statute excluded "separate" property from the term "marital property." Separate property is defined as that which is acquired before marriage and that which is acquired during marriage by gift, bequest, devise or descent. Only marital property is divisible upon divorce. *See* Freed & Foster, *Divorce in the Fifty States: An Overview,* 14 Fam.L.Q. 230–31 (1981).

**8.** The parental duty to support children is not here involved. That duty exists independent of the character of property a spouse owns and

the financial support necessary to keep him or her from being a charge of society. As noted earlier, New Mexico currently allows its courts to transfer spouses' separate property on divorce, but the statute permitting such expressly notes that the transfer is considered alimony. N.M.Stat.Ann. § 40–4–7.B(1). Divestiture of separate property for reason of financial support is nothing less than alimony. Our legislature has not authorized Texas courts to grant permanent alimony, and we do not perceive that it is our function to legislate in its stead.

Whatever may be the reasons for the strong Texas legislative policy against permanent alimony, this court will respect it. To do otherwise requires this court to disregard the rules of statutory construction, the history of the law prohibiting divestment of separate property, the developed law of the other community property states; it would wipe out the legal distinctions between property, generate unnecessary constitutional problems about the classification and taking of property, create a new cycle of problems in construing amended article 3.63(b) of the Family Code, and would be contrary to the directions the law is taking in both common and community property law states as well as in the provisions of the Uniform Marriage and Divorce Act. The rules stated in this cause and in *Eggemeyer* harmonize these problems and keep the Texas community law consistent with the law of the other community property states. If there is a need for permanent alimony, it must come from the legislature where the policy arguments can be fully addressed by the whole public.

### B. Separate Personal Property, Like Separate Real Property, May Not Be Divested

■ The court in *Eggemeyer* was unanimous in its decision, as stated by the dis-

sent, that the "estate of the parties" includes both real and personal property. In 1969, article 4638, later to become section 3.63 of the Family Code, was amended to eliminate the statutory prohibition concerning divestment of realty. As previously written, there was a question whether article 4638 meant that separate personalty could be divested. The Texas Legislature by its 1969 amendment of section 3.63 removed this provision, and as now written, the statute avoids the charge that it violates the due course of law, Tex. Const. art. I, § 19, equal protection, Tex. Const. art. I, § 3, and the constitutional classifications of property, Tex. Const. art. XVI, § 15. *See also* Castleberry, *supra*, at 40–46.

Sue Cameron argues that *Eggemeyer* stands only for the narrow rule that separate realty may not be divested; separate personalty, she argues, may be divested. Only realty was involved in *Eggemeyer,* but, on the issue concerning an unconstitutional classification between realty and personalty, the entire court agreed that realty and personalty must be treated alike.[9] To hold that the owner of separate realty may not be divested of his property, but that the owner of vendor's lien notes secured by the same realty or that the owner of stock in a corporation owning the realty could be divested would be an unreasonable classification of property. *Railroad Commission v. Miller,* 434 S.W.2d 670 (Tex.1968); *see San Antonio Retail Grocers, Inc. v. Lafferty,* 156 Tex. 574, 297 S.W.2d 813 (1957); *Ground Water Conservation Dist. No. 2 v. Hawley,* 304 S.W.2d 764 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e. per curiam,* 157 Tex. 643, 306 S.W.2d 352 (1957). Landholders cannot be so favored over holders of other kinds of property. *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *State v. Standard Oil Co.,* 130 Tex. 313, 107

---

may be enforced and secured by setting aside property, separate or community, to assure the children's support. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977); *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46 (1931); *Hedtke v. Hedtke,* 112 Tex. 404, 248

S.W. 21 (1923); *Gulley v. Gulley,* 111 Tex. 233, 231 S.W. 97 (1921).

**9.** The dissent stated: "There is no difference in the constitutional classification of separate real and separate personal property." Eggemeyer, *supra,* at 144 (Steakley, J., dissenting).

S.W.2d 550, 557 (1937). The term "property" includes every species of property. *Gulf, C. & S.F. Ry. v. Fuller,* 63 Tex. 467, 469 (1885); *Renault, Inc. v. City of Houston,* 415 S.W.2d 948 (Tex.Civ.App.—Waco), *rev'd on other grounds,* 431 S.W.2d 322 (Tex.1968); *see* Castleberry, *supra,* at 46.

Our construction of the statute corresponds with the law that prevails in community property states. Arizona holds that there may be no divestment of either separate realty, *Porter v. Porter,* 67 Ariz. 273, 195 P.2d 132 (1948), or of separate personalty, *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (Ct.App.1966). California denies a divestment of separate realty, *Reid v. Reid,* 112 Cal. 274, 44 P. 564 (1896), and treats separate personalty in the same manner, *Donovan v. Donovan,* 223 Cal.App.2d 691, 36 Cal.Rptr. 225 (Dist.Ct.App.1963). Idaho held the same in *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974). In Nevada, neither the separate realty, *Thorne v. Thorne,* 74 Nev. 211, 326 P.2d 729 (1958), nor the separate personalty, *Zahringer v. Zahringer,* 76 Nev. 21, 348 P.2d 161 (1960), may be divested in settling marital property rights. We can find no justifiable reason for treating separate personalty in a different manner than separate realty in divorce proceedings. As a result, we reject Sue Cameron's argument to allow the divestiture of separate personalty upon divorce.

*C. "Separate" Property Under Common Law and Community Property Regimes*

■ Mr. Cameron acquired most of the U.S. Savings Bonds here at issue during his marriage to Sue Cameron while the couple was domiciled in common law states. Reviewing the action of the trial court, which had awarded Mrs. Cameron one-half of the bonds, the court of civil appeals characterized the bonds earned by Mr. Cameron in the common law jurisdictions as his separate property and held that the trial court could

not divest a spouse's separate personalty. 608 S.W.2d at 751. We recognize that property acquired in common law jurisdictions has historically been termed "separate" property, but we hold that the property spouses acquire during marriage, except by gift, devise or descent should be divided upon divorce in Texas in the same manner as community property, irrespective of the domicile of the spouses when they acquire the property.

Characterization of the common law marital estate as separate property comes from the common law concept that the wife possessed no legal identity apart from her husband in whom legal title to the couple's property vested. *See* Oldham, *Property Division in a Texas Divorce of a Migrant Spouse: Heads He Wins, Tails She Loses?,* 19 Hous.L.Rev. 1, 3–15 (1981); *see generally* Dickson v. Strickland, 114 Tex. 176, 201–02, 265 S.W. 1012, 1021–22 (1924). Beginning with the enactment of the various Married Women's Property Laws throughout the nation during the nineteenth and early twentieth centuries, common law jurisdictions began to modify statutorily their archaic treatment of wives' rights in marital property. *See* Glendon, *Matrimonial Property: A Comparative Study of Law and Social Change,* 49 Tul.L.Rev. 21, 28–35 (1974). As a result of the statutes, courts in thirty-nine of the forty-two common law property states [10] now possess power to fashion upon divorce an equitable distribution of property acquired during marriage. *See* Freed & Foster, *Divorce in the Fifty States: An Overview,* 14 Fam.L.Q. 229, 249–52 (1981). A husband in a common law state may now have full paper title to property, but the non-acquiring wife holds valid and substantial rights to an equitable share of the "separate" marital property on divorce. *See* H. Marsh, Jr., Marital Property in Conflicts of Law 22–67 (1952).[11]

---

10. Even in those three states—Mississippi, Virginia, and West Virginia—the wife has some of the "bundle of sticks." Any injustice that accrues to divorcing parties from one of those three states, is the problem of their own archaic and unfair laws.

11. In the thirty years since Professor Marsh published his work, the distinctions between marital property that is called "separate" property in common law and community property states have become more pronounced. *See* K. Gray, *supra,* at 63–67.

Common law jurisdictions have been compelled to recognize the justness of a community property system which recognizes the rights of both the husband and wife during the period of their acquisition of real and personal property. Common law marital property is not and should not be regarded by Texas courts as "separate" property in the context of our community property law on divorce. *See* Tex. Const. art. XVI, § 15. Four of the eight community property states in recent years have addressed this difference in meanings of terms and have recognized the distinctions between the community and common law property concepts of "separate" property. Each court has looked behind the label when dividing marital property, that which was acquired during marriage.

In *Hughes v. Hughes,* 91 N.M. 339, 573 P.2d 1194 (1978), the New Mexico Supreme Court considered the disparate natures of separate property in common law and community property states. The court held that New Mexico courts should not treat separate property as recognized in common law jurisdictions the same as separate property under community property laws. *Id.* at 1201–02. The court further held the bare legal principle that a wife has no legal title in her husband's separate common law marital property could not be accepted in light of the benefits, incidents, and immunities recognized as attaching to marital property in a wife's favor by courts in common law property states. *Id.* at 1197–99.

The Idaho Supreme Court in *Berle v. Berle,* 97 Idaho 452, 546 P.2d 407 (1976), also viewed the separate property concept in the common law state of New Jersey as significantly different from the concept of separate property under Idaho's community property laws. The trial court in *Berle* had characterized the husband's common law

marital property as separate property and had concluded that Idaho's prohibition against divesting separate property entitled the husband to all the common law property. In reversing the judgment of the trial court, the Idaho Supreme Court maintained that Idaho's prohibition of divestiture was restricted to "separate" property within the context of the *community* property laws and did not prevent that state's courts from acknowledging the rights of spouses to an equitable division of *common law* separate property on divorce. *Id.* at 409.

In *Rau v. Rau,* 6 Ariz.App. 362, 432 P.2d 910 (1967), the court of appeals in Arizona confronted a judgment in which an Arizona trial court had equally divided personalty (savings bonds) and realty (a farm) that the Raus bought with funds they acquired during their marriage in Illinois, a common law state. The court determined that a spouse in Illinois holds an equitable interest upon divorce to a fair and just division of jointly earned marital property even though title to such property rests in the name of only one spouse. Comparing the definition of separate property under Arizona statutory law [12] with the nature of separate property as found in Illinois, the court maintained that Arizona's prohibition against divestiture of spouses' "separate" property would not preclude a division of the Illinois common law separate property. *See also Braddock v. Braddock,* 91 Nev. 735, 542 P.2d 1060 (1975). We agree with the New Mexico, Idaho, Arizona, and Nevada courts that substantively distinguish common law marital property from the separate property of community property jurisdictions.

The 67th Texas Legislature last year adopted this sensible approach when it authorized a division, on divorce, of common law property acquired during marriage in a

---

**12.** The court in *Rau* cited Arizona's community property definition of separate property, and except for its treatment of the increases, rents, issues and profits from separate property, it is the same definition we have in Texas.

*Compare* Ariz.Rev.Stat.Ann. § 25–213:

    A. All property, real and personal, of the husband, owned or claimed by him before marriage, and that acquired afterward by

gift, devise or descent, and also the increase, rents, issues and profits thereof, is his separate property;

*with* Tex.Const. art. XVI, § 15:

    All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse. . . .

manner like they would divide community property on divorce. This amendment to Tex.Fam.Code Ann. § 3.63 provides as follows:

(b) In a decree of divorce or annulment the courts shall also order a division of the following real and personal property, wherever situated, in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage:

(1) property that was acquired by either spouse while domiciled elsewhere and that would have been community property if the spouse who acquired the property had been domiciled in the state at the time of the acquisition; or

(2) property that was acquired by either spouse in exchange for real or personal property, and that would have been community property if the spouse who acquired the property so exchanged had been domiciled in this state at the time of its acquisition.

The bill analysis accompanying the subsequently adopted statute correctly explained:

Two separate systems of marital property regimes exist in the various states: common law and community property. Each regime provides for the welfare and estate of both spouses upon dissolution of marriage. The end result is similar while the nomenclature is different. In community property states, like Texas, each spouse has legal title in property accumulated during the marriage. In common law states, the same property may belong to one spouse, but the other spouse is found to have acquired an equitable interest that can be vested upon dissolution of the marriage.

House Comm. On The Judiciary, 67th Legislature Of Texas, Bill Analysis To H.B. 753, p. 1 (1981). In enacting subsection (b) of Tex.Fam.Code Ann. § 3.63, the legislature established a workable, uncomplicated framework for effecting just divisions of

common law marital property on divorce in Texas. The amendment, however, applies only to suits for divorce or annulment in which a hearing has not been held before September 1, 1981. 1981 Tex.Gen.Laws, ch. 712, § 3, at 2656. The trial court rendered a judgment divorcing the Camerons in 1979. Rather than returning in this cause to the now discredited approach of assuming the equivalence of "separate" property under community property systems and common law "separate" property, and rather than embarking upon a cumbersome conflict of laws approach [13] which produces essentially the same result, we judicially adopt Tex. Fam.Code Ann. § 3.63(b) as part of the substantive law of this state.

It has been suggested that section 3.63(b) may run afoul of this court's decision in *Eggemeyer,* because the statute may unconstitutionally authorize trial courts to interfere with the rights of a spouse holding legal title to common law marital property. *See* Oldham, *supra,* at 37–46; Stewart & Orsinger, *Fitting a Round Peg into a Square Hole: Section 3.63, Texas Family Code, and the Marriage that Crosses State Lines,* 13 St. Mary's L.J. 477, 486–91 (1982).

As stated above, divorce courts in all but three of the common law jurisdictions may effect an equitable distribution of the marital assets upon divorce. The New Mexico Supreme Court explained in *Hughes:*

[T]he wife, in many common law states . . ., has inchoate equitable rights to her husband's separate property where she has made contributions to preserving and bettering that property, whereas in a typical community property state she has no such rights since she has community property rights instead.

*Hughes, supra,* at 1199. A Texas court that makes a distribution on divorce of the common law marital estate equivalent to what would occur in the common law jurisdiction where the couple was domiciled when they acquired the property, does not impair the

---

**13.** Professor J. Thomas Oldham has thoughtfully developed this viable concept in Oldham, *Property Division in a Texas Divorce of a Mi-* *grant Spouse, Heads He Wins, Tails She Loses,* 19 Hous.L.Rev. 1 (1981).

rights of spouses in the common law marital property. No divestment transpires because the acquiring spouse loses no more in a Texas divorce than he loses in a judgment rendered in an equitable distribution common law state. *Berle, supra,* at 411. Our judicial adoption of the quasi-community property amendment to Tex.Fam.Code Ann. § 3.63 does not violate article I, section 19 of the Texas Constitution.

## III. CONCLUSION

The framework for the Spanish community property system of marital property builds upon a distinction between spouses' community and separate estates. This distinction springs from a reality that property acquired during marriage other than by gift, devise or descent is the product of a unique, joint endeavor undertaken by spouses. That is the concept of matrimony. Community property owes its existence to the legal fact of marriage, and when the parties to that compact determine their relationship should end, property acquired during marriage is and should be divided among them in a just and right manner. By way of contrast separate property, in the community property setting, owes its existence to wholly extramarital factors, things unrelated to the marriage. In relation to that property, the parties are, in essence, strangers; they are separate. Any property that arises independently of marriage as a means of "equitably" balancing the spouses' positions on divorce cannot be justified. Such a view rejects the viability of the community property system and ignores the carefully hewn jurisprudence that attempts to preserve the integrity of the two estates. The vast majority of common law property states have demonstrated that they too recognize the special nature of property acquired through the corroborative efforts of spouses. In adopting Tex. Fam.Code Ann. § 3.63(b) as the substantive law of the state, we continue the national trend endorsing the use of marital property as the means of settling the equities between divorcing spouses.

We reverse that part of the judgment of the court of civil appeals that denied Sue Cameron fifty percent of the savings bonds and affirm the judgment of the trial court ordering the equal division.

We reverse that part of the judgment of the court of civil appeals that reversed the trial court's judgment that Sue Cameron receive thirty-five percent of the military retirement pay, and we render judgment awarding Sue Cameron her share of the military retirement pay but only from June 25, 1981.

Costs are adjudged against the respondent.

McGEE, Justice, concurring.

I agree with the judgment of the Court. I also concur in that portion of the majority opinion which holds that marital property acquired in a common law state is subject to division by a Texas court upon the parties' divorce. I cannot, however, accept the majority's unnecessary discussion of *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977). Since the entire Court agrees that the savings bonds at issue in this case are not separate property, the majority's discussion of separate personalty is *obitur dictum.* As in *Eggemeyer,* a majority of this Court has reached conclusions grounded on statutory and constitutional considerations not essential to the disposition of the case. Because I do not believe *Eggemeyer* correctly states the law in all respects, I respectfully disagree with the majority's statement to the contrary.

In *Eggemeyer,* the issue before the Court was whether the trial court, in its divorce decree, could "divest one spouse of his separate *realty* and transfer title to the other spouse." 554 S.W.2d at 138 (emphasis added). Virginia Eggemeyer's principal contention was that section 3.63, unlike former article 4638, did not restrict the power of the trial court to divide the separate realty of one spouse and award the other spouse a fee interest therein. The Court rejected this contention, holding that the legislature had intended to recodify the law as it existed before the enactment of the Family Code.

The majority opinion in *Eggemeyer*, however, transcended the precise issue before the Court and advanced three additional grounds for its decision:

(1) the phrase "estate of the parties," as employed in section 3.63 of the Family Code refers only to the community property of the parties and prohibits the division of separate property;

(2) a division of the separate property of one spouse would create a form of separate property not provided for in article XVI, section 15 of the Texas Constitution;

(3) a division of the separate property of one spouse is a taking of property not justified by any public benefit, and deprives that spouse of his property without due process in violation of article I, section 19 of the Texas Constitution.

In this case, the majority states that these supposed limitations on the power of the trial court are equally applicable to an attempted division of separate personalty. For the following reasons, I disagree.

A. *Eggemeyer* Is Not Stare Decisis on the Divisibility of Separate Personalty under the Family Code.

The first statutory ground advanced in *Eggemeyer* was that the legislature intended to enact the Family Code as a codification of existing law. 554 S.W.2d at 139. Article 4638, the forerunner of section 3.63, expressly prohibited divestiture of *realty* by a trial court when making a fair and just division of property in divorce proceedings. For over a hundred years, however, Texas courts divided separate personalty when equity demanded such a division. *Hedtke v. Hedtke*, 112 Tex. 404, 409, 248 S.W. 21, 22–23 (1923); *Fitts v. Fitts*, 14 Tex. 443, 450, 453 (1855); *Trader v. Trader*, 531 S.W.2d 189, 190 (Tex.Civ.App.—San Antonio 1975, writ dism'd); *Tullis v. Tullis*, 456 S.W.2d 172, 173 (Tex.Civ.App.—El Paso 1970, writ dism'd); *Dillingham v. Dillingham*, 434 S.W.2d 459, 461 (Tex.Civ.App.—Fort Worth 1968, writ dism'd); *Grant v. Grant*, 351 S.W.2d 897, 898 (Tex.Civ.App.—Waco 1961, writ dism'd); *McCart v.*

*McCart*, 275 S.W.2d 155, 157 (Tex.Civ.App.—Fort Worth 1955, no writ); *Grisham v. Grisham*, 255 S.W.2d 891, 893 (Tex.Civ.App.—Waco 1953, no writ); *Hamm v. Hamm*, 159 S.W.2d 183, 185–86 (Tex.Civ.App.—Fort Worth 1942, no writ); *Dale v. Dale*, 141 S.W.2d 718, 719 (Tex.Civ.App.—Beaumont 1940, no writ).

The statutory prohibition of divestiture of realty was not carried forward in section 3.63 of the Family Code. Despite the obvious omission of that prohibition, the Court determined the legislative intent behind section 3.63 was to codify the law as it existed at that time. *Eggemeyer*, 554 S.W.2d at 139. Thus, section 3.63 did not authorize divestiture of separate realty upon divorce. *Id.*

This holding alone would have been sufficient to sustain the Court's judgment in *Eggemeyer*. Nevertheless, the Court advanced a second statutory ground as a basis for its decision. Upon exmaining section 3.63, the Court held that the "estate of the parties" was limited to community property. In so doing, the Court redefined the statutory language in a manner wholly different from that which existed previously. Consequently, the Court's construction of section 3.63 was inconsistent with its simultaneous determination that the Family Code codified the existing law.

In *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923), this Court construed the phrase "estate of the parties" as follows:

The estate subject to division, under the statute, includes *all property of the parties whether community property or separate property*. The meaning of the statute is not different from what it would have been had the word 'property' been substituted in its phraseology for the word 'estate.'

*Id.* at 408, 248 S.W. at 22 (emphasis added). Notwithstanding continued judicial and legislative acceptance of this construction, the majority in *Eggemeyer* examined several relatively recent cases and determined "estate of the parties" referred only to community property. *See Reardon v. Reardon*, 163

Tex. 605, 359 S.W.2d 329 (Tex.1962); *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960); *Mansfield v. Mansfield,* 308 S.W.2d 80 (Tex.Civ.App.—El Paso 1957, writ dism'd). Upon closer examination, it is clear those cases dealt solely with the question of whether title to community real estate could be divested. None of these cases purported to construe "estate of the parties." [1]

The courts of this State historically have interpreted "estate of the parties" to mean all property of the parties, whether community or separate. *E.g., Hedtke v. Hedtke,* 112 Tex. at 408, 248 S.W. at 22; *Fitts v. Fitts,* 14 Tex. at 450; *Trader v. Trader,* 531 S.W.2d 189, 190 (Tex.Civ.App.—San Antonio 1975, writ dism'd). Any doubt as to the correct construction of a statute must be considered removed by consistent interpretation by the appellate courts. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 193 (Tex.1968); *see also Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46 (1931). As Justice Norvell cautioned in *Marmon,* the doctrine of *stare decisis* is especially weighty in statutory construction:

> "It is one thing for the judicial branch to amend a statute and quite another thing to modify a rule of common law. And, to overrule a court's uniform interpretation of a statute which has persisted over a long period of years as evidenced by numerous decisions, is very like amending a statute. That is why the rule of stare decisis is highly binding in this field."

430 S.W.2d at 193. Because the definition of "estate of the parties" was not essential to the holding in *Eggemeyer,* and because it represented a departure from established construction, I do not regard the *Eggemeyer* definition as a correct statement of the law.[2]

B. *Eggemeyer* Is An Incorrect Construction of the Texas Constitution.

The Court's judgment in *Eggemeyer,* as noted above, was fully supported by the holding that section 3.63 was merely a recodification of existing law. Thus, it is not surprising that the subsequent discussion of the constitutional limitations on the division of separate property in general has been treated as dicta, *Muns v. Muns,* 567 S.W.2d 563, 565 (Tex.Civ.App.—Dallas 1978, no writ), and has not been viewed as prohibiting an award of one spouse's separate personalty to the other. *York v. York,* 579 S.W.2d 24, 25 (Tex.Civ.App.—Beaumont 1979, no writ); *Eichelberger v. Eichelberger,* 557 S.W.2d 587, 589 (Tex.Civ.App.—Waco 1977), *rev'd on other grounds,* 582 S.W.2d 395 (Tex.1979). The constitutional bases of *Eggemeyer* should not be regarded as authoritative since this Court will not decide a case on constitutional grounds if the case can otherwise be disposed of. *See, e.g., Wood v. Wood,* 159 Tex. 350, 359, 320 S.W.2d 807, 813 (1959); *San Antonio General Drivers, Helpers Local No. 657 v. Thornton,* 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957); *Waller v. State,* 68 S.W.2d 601, 603 (Tex.Civ.App.—Amarillo 1934, writ ref'd).

1. In *Reardon v. Reardon,* the Court held that the prohibition against divestiture of title to real estate in article 4638 did not include community real estate. 163 Tex. at 607, 359 S.W.2d at 330. The most that should be taken from this holding is that the "estate of the parties" *does* include community realty. I do not believe the holding excludes from the definition the separate property of the spouses. If "estate of the parties" was intended to apply only to community property, that portion of article 4638 prohibiting divestiture of title to realty would have been mere surplusage.

In *Hailey v. Hailey,* the Court noted with approval the language in *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306 (1939), that title to realty could not be divested. The Court held that the division of community real property is proper and does not violate article 4638 because a partition deed merely dissolves a tenancy in common and does not convey title. 160 Tex. at 375–76, 331 S.W.2d at 302–03. Accordingly, when a trial court orders a partition of community property, title to that property is not divested. In *Mansfield v. Mansfield* the holding was the same. 308 S.W.2d at 83.

2. The fact that the legislature has not amended section 3.63 since the Court's decision in *Eggemeyer* is not evidence of the legislature's intent to limit the "estate of the parties" to community property. In light of the constitutional dicta in *Eggemeyer,* the legislature reasonably could have believed that any attempt to include separate property in the estate of the parties would have been unconstitutional.

In my opinion, there are no constitutional limitations on the power of the trial court to divest a spouse of his or her separate property.

Prior to its amendment in 1980, article XVI, section 15 of the constitution provided as follows:

All property, both real and personal, of the wife, owned prior to marriage or claimed by her before marriage by gift, devise or descent, shall be the separate property of the wife; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband . . . .

Citing *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925), the majority in *Eggemeyer* stated that the constitutional definition of separate property was exclusive and could not be altered or enlarged by the legislature. Thus, even if section 3.63 could be construed as permitting a divestiture of one spouse's separate realty, the trial court was still powerless to make an award of one spouse's separate property to the other in its divorce decree.

What the Court overlooked in *Eggemeyer* is that the division of property upon divorce does not occur during the marriage, but at the moment of divorce; the division of property and the divorce decree are a single, integrated action. Application of those rules which characterize property before and during marriage is inappropriate. An analogous situation involves community property that is not divided upon divorce. We have consistently held such property is owned by the ex-spouses separately as tenants in common. *Busby v. Busby,* 457 S.W.2d 551, 554 (Tex.1970); *Taylor v. Catalon,* 140 Tex. 38, 41–42, 166 S.W.2d 102, 104, (1942); *Kirkwood v. Domnan,* 80 Tex. 645, 647–48, 16 S.W. 428, 429 (1891). In both instances, this "separate property" is not within the constitutional definition, but is created by the fact of divorce.

There are, moreover, at least two additional situations in which property that is neither "owned prior to marriage" nor acquired thereafter by "gift, devise or de-

scent" is treated as separate property. The first is a mutation of separate property. The second, personal injury awards, is particularly instructive for the purposes of this case. In *Graham v. Franco,* 488 S.W.2d 390 (Tex.1972), we unanimously held that such awards were the separate property of the injured spouse despite their exclusion from the constitutional definition. More importantly, we limited *Arnold v. Leonard* to its facts. Thus, the most that can be gleaned from *Arnold v. Leonard* is that the legislature is powerless to enact a law classifying the rents and revenues of the wife's separate realty as her separate property.

There is, however, a more basic flaw in the "implied exclusion" reasoning of *Arnold v. Leonard.* Logically extended, it denies the existence of the husband's separate property since the constitution, until the 1980 amendment of article XVI, section 15, provided only for the separate property of the *wife.* Under a strict reading of *Arnold v. Leonard,* all property owned by the husband before marriage and acquired thereafter during marriage is necessarily *community.*

The fact that property is community or separate is pertinent to its division upon divorce. The courts of appeals have evolved several equitable rules which, quite properly, limit the trial court's discretion to award the separate property of one spouse to the other spouse to extraordinary circumstances. *Muns v. Muns,* 567 S.W.2d 563, 567 (Tex.Civ.App.—Dallas 1978, no writ); *Cooper v. Cooper,* 513 S.W.2d 229, 233 (Tex.Civ. App.—Houston [1st Dist.] 1974, no writ); *Bryant v. Bryant,* 478 S.W.2d 602, 605 (Tex. Civ.App.—Waco 1972, no writ); *Dorfman v. Dorfman,* 457 S.W.2d 91, 95 (Tex.Civ.App.— Waco 1970, no writ); *Keene v. Keene,* 445 S.W.2d 624, 626 (Tex.Civ.App.—Dallas 1969, writ dism'd). Equity and the theory of community property argue for such rules. For over a century, Texas courts awarded separate personalty upon divorce. Prior to *Eggemeyer,* this was not considered a constitutional problem. It was the *statutory* provision, not the constitution which prohibited the award of separate *realty* upon di-

vorce. Therefore, I would hold that article XVI, section 15 of the constitution does not prohibit a trial court from dividing the separate property of one spouse upon divorce.

The second constitutional basis for the Court's decision in *Eggemeyer* was the due process clause of the Texas Constitution. Tex.Const. art. I, § 19. In *Eggemeyer,* the Court stated that the division of one spouse's separate property was not justified by any benefit to the public welfare. Because this "taking" of private property was not grounded upon the police power, the legislature could not constitutionally authorize a division of one spouse's separate property.

I disagree with this holding. As stated in the dissent in *Eggemeyer,* "[t]he special relationship between the State and the institution of marriage has often been recognized." 554 S.W.2d at 147. The state's interest in the marital relationship provides a sufficient and justifiable public purpose for divestiture of one spouse's separate property. *Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (1897).

By ordering periodic child support payments, Texas courts are empowered to divest a parent of his separate personalty. Tex.Fam.Code Ann. § 14.05. Likewise, the state imposes a duty upon the spouses to support each other during the marriage. *Id.* § 4.02. Although a spouse must look first to the community for support, the other spouse may be required to employ his or her separate funds if community funds are insufficient. *Norris v. Vaughan,* 152 Tex. 491, 502–03, 260 S.W.2d 676, 683 (1953); *Callahan v. Patterson,* 4 Tex. 61, 66 (1849). In neither case is there a violation of due process. The valid state interest in the marital relationship justifies the burdens imposed upon a spouse's separate property. That same valid state interest allows the state to provide rules for the dissolution of the marriage and the division of both separate and community property upon dissolution.

Section 3.63 of the Family Code and previous Texas divorce statutes have required the division of marital property according to equitable principles. In many circumstances, equity may require an unequal division of community property. *Bell v. Bell,* 513 S.W.2d 20, 22 (Tex.1974). Likewise, in extreme cases, equity may require the trial court to award a portion of one spouse's separate personalty to the other. I would hold that article I, section 19 of the Texas Constitution is no impediment to an award of one spouse's separate property to the other.

The majority opinion suggests that allowing a divestiture of separate personalty under section 3.63, in light of the holding in *Eggemeyer* that separate realty cannot be divested, is a violation of equal protection under the Fourteenth Amendment of the United States Constitution and article I, section 3 of the Texas Constitution. The argument is that a classification based on land ownership arbitrarily discriminates against those persons owning separate personalty rather than separate realty. I do not find this contention persuasive.

The equal protection clauses of both the federal and state constitutions protect individuals against arbitrary discrimination by the state. The state, however, may classify its citizens into reasonable classes, and treat these different classes of persons in different ways. *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *Railroad Commission v. Miller,* 434 S.W.2d 670, 673 (Tex.1968); *Bjorgo v. Bjorgo,* 402 S.W.2d 143, 148 (Tex.1966).

The test under both the state and federal constitutions is whether the classification is reasonable and not arbitrary. *Reed v. Reed,* 404 U.S. at 76, 92 S.Ct. at 254 (1971); *Railroad Commission v. Miller,* 434 S.W.2d at 673; *San Antonio Retail Grocers v. Lafferty,* 156 Tex. 574, 577, 297 S.W.2d 813, 815 (1957). There must be some ground of difference which has a fair and substantial relationship to the purpose of the legislation, so that all persons similarly situated are similarly treated. *New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Railroad Commission v. Miller,* 434 S.W.2d at 673.

There is a rational purpose for the different treatment accorded owners of real and personal property by the trial courts upon divorce. Realty, by definition, is unique. By contrast, personalty is often fungible and more easily replaced than realty. If a spouse's personalty is genuinely unique and irreplaceable, the trial court can consider this fact under section 3.63.

### C. A Divestiture of Separate Property Is Not an Award of Alimony.

The majority opinion asserts that a divestiture of separate property "is nothing less than alimony." Thus, the majority concludes that a division of one spouse's separate property is not only prohibited by section 3.63 and the Texas Constitution, but is also contrary to public policy. I disagree.

A divestiture of separate property and an award of alimony are totally different. Unlike a divestiture of separate property, alimony is a personal obligation of one spouse to support the other which continues after a final decree of divorce. *Francis v. Francis*, 412 S.W.2d 29, 32–33 (Tex.1967). By contrast, a divestiture of separate property, like a division of community property, is an isolated event which occurs at the moment of divorce. Alimony and an award of separate property are two distinct means of achieving a single end: the financial support of the ex-spouse. Because Texas does not permit alimony, our courts, with the implicit approval of the legislature, have permitted divestiture of one spouse's separate personalty to ensure that the other spouse does not become a destitute ward of the state.

The majority also stresses that its opinion conforms with the law of other community property jurisdictions. While it is true that no state other than Washington permits a divestiture of separate property, it is equally true that the courts of these states are empowered to award permanent alimony. This is a critical distinction which the majority relegates to a footnote.

### D. Conclusion.

Neither *Eggemeyer* nor the majority opinion in this case should be viewed as anything but dicta regarding the power of the trial court to divide separate personalty upon divorce. In my opinion, section 3.63 of the Family Code allows the trial court to divest a spouse of his or her separate personalty. Furthermore, I do not believe the Texas Constitution prohibits such a division.

BARROW and SONDOCK, JJ., join in this concurring opinion.

GREENHILL, Chief Justice, concurring.

I agree with the substance of the concurring opinion of Mr. Justice McGee.

I also agree with the holding of the Court that marital property acquired in a common-law jurisdiction is not separate property within the framework of the Texas community property laws.

The majority opinion gives several grounds for its holdings with which I obviously do not agree. Since there are many reasons given, it is not necessary to reach constitutional grounds, particularly the "due process" argument. A wise rule of opinion writing and appellate judgments is that constitutional grounds are not decided unless it is absolutely necessary.

A redeeming feature of the majority opinion, as I understand it, is that it does not reach the "due process" point. If it even suggests such a holding, it is unnecessary to the opinion.

The Court's opinion does not disavow the dictum of the earlier opinion in *Eggemeyer.* Separate personal property was not before the Court in *Eggemeyer;* and any observation about "due process" was, in my opinion, clearly dictum. With this state of the law, we also have the undisturbed language of *Hedtke* that it was permissible to deal differently with separate realty and separate personalty.

It is my hope, therefore, that the Court's power to deal with separate property, particularly separate personal property, may be addressed by the Legislature. After all, the Legislature is the policy making body of this state. In this context, the Legislature

will have an alternative to enacting alimony statutes which will surely result if the "due process" dictum of *Eggemeyer* should ultimately prevail. The Legislature can change the "estate of the parties" and other statutory provisions; but it cannot change the "due process [due course] of law" of the Texas Constitution,—without a constitutional amendment.