Daniel ABERNATHY, Appellant,

v.

Lori Ann FEHLIS, Appellee.

No. 03–93–00523–CV.

Court of Appeals of Texas, Austin.

Nov. 22, 1995.

Malcom C. Smith, Austin, for appellant.

Rick J. Kennon, Felts & Mashburn, Austin, for appellee.

Before POWERS, ABOUSSIE and JONES, JJ.

POWERS, Justice.

### THE CONTROVERSY

The trial court declared in its decree that Daniel's adultery caused the "breakup" of the marriage and justified a disproportionate division of the parties' community property. On that ground, the trial court divided as follows the parties' community property and joint obligations:

|  | Lori | Daniel |
|---|---|---|
| Personal Property | $ 4,235 | $ 1,430 |
| Retirement benefits | $ 2,263 | 3,298 |
| Savings | 850 | 850 |
| Interest | 2,713 | 2,713 |
| Home | 42,000 | –0– |
| Home-mortgage debt | –0– | –43,000 |
| Tax debt | –0– | 880 |
|  | $52,061 | $–35,589 |

In addition, the decree confirms Lori's separate-property title to personal property worth $4,350 and Daniel's separate-property title to real and personal property worth something over $146,449. The trial court has not found these amounts nor the amounts shown in the table above. We have taken the amounts indicated from Daniel's evidence for purposes of discussion.

Daniel appeals on four points of error challenging the division of community property and joint obligations as set out in the table.

### DISCUSSION AND HOLDINGS

■ In his third point of error, Daniel complains the trial court erred in excluding his evidence that Lori refused to have sexual intercourse with him, arguing that this placed her equally at fault in the dissolution of the marriage. For purposes of discussion only, we will assume as true Daniel's contention that the parties were both at fault. This renders any error harmless and we overrule the point of error.

■ In his fourth point of error, Daniel complains that the provisions of the decree pertaining to the home and home-mortgage debt unlawfully divest him of his separate property. *See* Tex. Const.Ann. art. XVI, § 15 (1876); Tex.Fam.Code Ann. § 3.63 (1993); *Cameron v. Cameron,* 641 S.W.2d 210, 213 (Tex.1982). These contentions refer to the following events:

During their marriage, Daniel and Lori purchased a home with the proceeds of a $45,000 loan from Daniel's father. In evidence of the debt, they executed and delivered their promissory note in the indicated amount, payable in installments and secured by a deed-of-trust lien. They made installment payments until shortly before the father died in 1990, reducing the debt to about $43,000. Shortly after Lori filed her divorce action, the father's executor assigned to Daniel the deed-of-trust lien "as his separate property" and "[i]n accordance with Article Five of the Last Will and Testament of [Daniel's father] which forgives any and all debts due and owing him by his son, Daniel." Neither the note nor the will are in evidence. The evidence does not show whether the note was a negotiable instrument or a simple con-

tract to pay money. Nor is the deed of trust in evidence. The gist of Lori's testimony is that she believed the father forgave the debt before he died. The substance of Daniel's testimony is that the father agreed merely to a temporary suspension of installment payments before he died and that Daniel inherited the mortgage.

The decree awards Lori the home "free and clear of any and all liens or obligations," divests Daniel "of all right, title, interest, and claim in and to such property," confirms that the mortgage is Daniel's separate property, but requires him to pay the obligation and holds Lori harmless thereon. Daniel contends the cumulative effect of these provisions is to destroy the mortgage as an article of property and thus to deprive him of a separate-property asset acquired by inheritance from his father.

■ While owned by the father or another stranger to the marriage, the mortgage was an item of property attended by rights that could not be taken away or diminished by a court except in an action brought for the purpose. There is no doubt that Daniel inherited the mortgage. It is therefore his separate property. Daniel was not, however, a stranger to the marriage. He and Lori made the mortgage during coverture and he inherited it during that period. The father's act of forgiving Daniel's liability on the debt, but not Lori's, and giving Daniel the mortgage as an obligation enforceable against Lori, did not convert the mortgage into Lori's obligation alone *so far as Daniel's and Lori's relations inter se were concerned.*[1] The obligations of co-makers, as between themselves, derive from their contractual or other relationship, and may not be altered by an act of their obligee. *See* 10 C.J.S. *Bills and Notes* § 37, 466–67 (1938); 11 Am.Jur.2d *Bills and Notes* §§ 588, 655–56 (1963). Therefore, the mortgage remained a joint

obligation existing at the time of the divorce, insofar as Daniel and Lori were concerned. The partition ordered by the trial court may have the effect of rendering the mortgage practically valueless in Daniel's hands, but the decree does not deprive him of any *vested* right in the mortgage because, being a subsisting joint obligation when he inherited it, he took the mortgage (as an asset) subject to the trial court's power to partition it as a joint obligation. Tex.Fam.Code Ann. § 3.63(a). We overrule the point of error.

■ In his second point of error, Daniel contends the division of community property and joint obligations is so disproportionate and inequitable as to constitute an abuse of discretion. He refers to the fact that the decree awards Lori property valued at $52,061 while assigning Daniel property and liabilities that result in a negative value, or net liability, of $35,589. Indeed, the decree required that he pay all of the parties' joint obligations totalling $43,880. Nevertheless, the proposition that Daniel must pay the home mortgage debt of $43,000 is a patent fiction. In actuality, he is not required to pay that sum because it is a debt that was extinguished by his father's forgiveness of the debt, so far as he is concerned, and he cannot enforce any obligation against himself. The fiction is tenable and useful only as a means of arguing against the decree provisions that Lori need not pay Daniel any sum by reason of the mortgage even though the decree awards the home to her.

■ Concerning the trial court's *power* in the matter, we point out that it lies within that court's discretion to award one spouse the bulk of the parties' community assets while requiring the other spouse to pay the bulk of their joint obligations, so long as the disparity is justified by the circumstances. Whether the circumstances justify the dis-

1. If the note was a negotiable instrument, the father's assignment of the lien, which necessarily carried with it a right in Daniel to have possession of the promissory note, effected a release of Lori as well as Daniel irrespective of the father's intention in the matter. *See* Tex.Bus. & Com. Code Ann. § 3.601(c)(1) (liability of all parties discharged when party who has himself no right of action or recourse on instrument reacquired it). If the note was not a negotiable instrument, it appears that Lori was not released as an obli-

gor unless she proved the father assigned the lien to Daniel with an intention to discharge her as well as Daniel. *See Pennington v. Bevering*, 17 S.W.2d 772, 773–74 (Tex.Comm.App.—1929). The record is silent on whether the note was a negotiable instrument and Lori's proof does not show the father intended to discharge her from the debt as well as Daniel. We assume, for purposes of discussion, that the father's actions did not discharge Lori's liability for the debt as to any and all owners of the note.

parity is subject to appellate review for an abuse of discretion, as in the present appeal. *See Coggin v. Coggin,* 738 S.W.2d 375 (Tex. App.—Corpus Christi 1987, no writ); *Welch v. Welch,* 694 S.W.2d 374 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Cusack v. Cusack,* 491 S.W.2d 714 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd w.o.j.).

Concerning next the trial court's *exercise* of the power, we note that a trial court may abuse its discretion in a number of ways. *See generally Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931 (Tex.App.—Austin 1987, no writ). In the present case, Daniel's argument raises the abuse of discretion that results when a trial court makes a decision that is unreasonable in the factual-legal context in which it is made because the court failed to consider a legally relevant factor shown in the evidence, the court made its decision based upon an irrelevant factor, or the court exaggerated a legally relevant factor to an unreasonable degree. *See id.* at 939–40.

The record reveals the following factors relevant to the division of the parties' property and joint obligations: (1) the parties, under our assumption, were equally at fault in causing the dissolution of the marriage; (2) Daniel earns $1,779 per month while Lori earns $1,142 per month; (3) the decree designates Lori managing conservator of the parties' two minor children and gives Daniel typical visitation rights while ordering that he pay monthly child support equal to $400 per child; (4) Daniel inherited before divorce property worth a relatively large sum; (5) as a result, Daniel's separate property, according to his evidence, has a value equal to something over $146,449 exclusive of any value represented by the promissory note previously held by Daniel's father; (6) included in Daniel's separate property, inherited from his father, are two promissory notes that yield to Daniel and his sister $11,830 annually, or $5,915 each in satisfaction of the undivided one-half interest each owns in the notes, again according to Daniel's evidence which we assume is true; 7) and Daniel will not have to pay the $43,000 mortgage debt in actual fact. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1991) (listing factors typically applicable to division of community property and joint obligations).

While the foregoing factors are all applicable to the trial court's decision, including the important assumption that both were at fault in causing the dissolution of the marriage, this does not mean that all the relevant factors must carry an equal weight in the trial court's decision. We are unable to say that a reasonable trial judge could not have ordered the partition of assets and liabilities made in this instance by the trial judge, based on whatever relative weights the judge assigned the various applicable factors, particularly in light of Daniel's *total* cash income, the disproportionate value of the parties' separate estates ($4,350 versus something over $146,449), and the fact that Daniel will not, in actuality, have to pay the $43,000 mortgage debt. In such instances, the trial judge's decision is immune from appellate revision even though the appellate court might not have made the same choices in the same circumstances. *See Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). Having concluded that an abuse of discretion is not shown by the record, we overrule Daniel's second point of error.

In his first point of error, Daniel contends the judgment must be reversed because the trial judge failed to file findings of fact and conclusions of law. Assuming the trial judge erred in this respect, we believe the error is rendered harmless because of the various assumptions we have made herein favorable to Daniel's position. *See Guzman v. Guzman,* 827 S.W.2d 445, 447 (Tex.App.—Corpus Christi 1992, writ denied); *Stubbs v. Stubbs,* 715 S.W.2d 373, 375 (Tex.App.—Houston [1st Dist.] 1986, no writ). Accordingly, we overrule Daniel's first point of error.

Finding no error as assigned, we affirm the decree.