IN THE MATTER OF MARRIAGE OF YOUNG

NO. 07-01-0272-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 12, 2002

______________________________

IN THE MATTER OF THE MARRIAGE OF

JERRY V. YOUNG AND PEGGY JOYCE YOUNG

_________________________________

FROM THE 64
TH
 DISTRICT COURT OF HALE COUNTY;

NO. A28736-9607; HONORABLE JACK R. MILLER, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In three points of asserted error, appellant Jerry V. Young (Jerry) challenges the trial court’s division of assets and allocation of liabilities between him and appellee Peggy Joyce Young (Peggy).  For reasons we later recount, we affirm in part, and reverse and remand in part.

The parties were married in 1981.  Although both of them had children from prior marriages, no children were born to this marriage.  In July 1996, Jerry filed his petition asking that the marriage be dissolved because of a discord or conflict of personalities and that Peggy was guilty of cruel treatment.  Peggy’s answer included a counterclaim seeking a divorce on the same grounds asserted by Jerry, except that he was the one allegedly guilty of cruel treatment.  In October 1996, Jerry’s mother, Edna Young (Edna) intervened in the suit asserting that she had loaned the parties $242,939 and that they owed her $24,000 rent.  Edna alleged that she had made a series of 12 loans from January 1985, through December 1994.  In November 1996, the trial judge signed agreed temporary orders requiring both parties to file inventories and requiring Jerry to pay specified monthly expenses of Peggy totaling $2,788.35.  In October 1998, Peggy alleged that Jerry had failed to make the monthly payments and sought enforcement of the temporary support order.  On December 8, 1998, the case was tried to the bench and, on October 15, 1999, a judgment was signed dissolving the marriage and dividing the property.

On December 28, 1999, the trial court granted a partial new trial limited to the issues concerning the proper division of the assets and liabilities between the parties, based on the record before the court at the conclusion of the trial which commenced on December 8, 1998.  On April 4, 2001, the court handed down its amended divorce decree containing the property division giving rise to this appeal.  Included in the property division was a recitation that the court had rendered judgment on October 15, 1999, in favor of Edna in the amount of $219,500, which was to be paid by Jerry.  In response to Jerry’s request, the trial court entered findings of fact and conclusions of law.  Jerry now presents three points error.  In those points, he asserts 1) the division of assets and liabilities is manifestly unjust, 2) the decree improperly divests appellant of his separate property, and 3) there is legally and factually insufficient evidence supporting a money judgment in favor of Peggy for unpaid temporary support.

As we noted, in his first point, Jerry challenges the trial court’s division of the community assets and liabilities.  Peggy initially responds that Jerry failed to preserve any error in this regard because Jerry, “while acknowledging that many circumstances may provide a basis for justifying a court’s division of a marital estate, failed to attack most of the factors found (in the findings of fact) as justification for the disproportionate division at issue.”  However, because Jerry specifically addressed the disproportionate division of the community estate in his motion for new trial, Peggy’s waiver argument is without merit.  In a divorce proceeding, a trial court is required to order a division of the parties’ estate in a manner it deems just and right.  
See
 Tex. Fam. Code Ann. § 7.001 (Vernon 1998).  The ultimate and controlling issue as to the property division is whether it is just and right.  
Hill v. Hill
, 971 S.W.2d 153, 155 (Tex.App.--Amarillo 1998, no pet.).  The ultimate or controlling issue as to the property division is whether it is just and right and the values of the property being divided, though related to the ultimate issue, is not a controlling issue.  
Hill v. Hill
, 971 S.W.2d 153, 155 (Tex.App.--Amarillo 1998, no pet.); 
Rafferty v. Finstad
, 903 S.W.2d 374, 376 (Tex.App.--Houston [1
st
 Dist.] 1995, writ denied).

The trial court is afforded wide discretion in dividing the marital estate and its discretion will not be disturbed on appeal unless a clear abuse of discretion is shown.  
Jacobs v. Jacobs
, 687 S.W.2d 731, 733 (Tex. 1985); 
Murff v. Murff
, 615 S.W.2d 696, 698 (Tex. 1981).  The community property need not be equally apportioned between the parties.  
See id.
 698-99.  In exercising its discretion, the trial court may consider many factors.  For example, the trial court may consider a spouse’s dissipation of the community estate, as well as the spouse’s misuse of community property.  
Vannerson v. Vannerson
, 857 S.W.2d 659, 669 (Tex.App--Houston [1
st
 Dist.] 1993, writ denied); 
Reaney v. Reaney
, 505 S.W.2d 338, 340 (Tex.Civ.App.--Dallas 1974, no writ).
  A disproportionate award may also be considered when a spouse conceals community assets.  
Rafdi v. Rafdi
, 718 S.W.2d 43, 45 (Tex.App.--Dallas 1988, no writ).  A spouse’s failure to make court-ordered temporary support payments or failure to obey the court’s temporary order restricting the use of community assets may also justify a disproportionate award from the community estate.  
See Jones v. Jones
, 699 S.W.2d 583, 585 (Tex.App.--Texarkana 1985, no writ).  Income tax liability may also be considered in dividing the community estate.  
See Baccus v. Baccus
, 808 S.W.2d 694, 700 (Tex.App.--Beaumont 1991, no writ).

The parties do not dispute the trial court’s characterization of the property at issue, but do assign different values to specific items and dispute the character of money received from Edna.  In its final decree, the trial court awarded the following property to Peggy:  their house in Plainview valued at $126,000, most household furnishings, a bank account containing $350, and a 1989 Oldsmobile with an approximate value of $2,500.  The court imposed the following liabilities on her: a $5,512 mortgage on the house, property taxes of $3,215, various credit card accounts totaling $3,629, and any obligation that might be owed to John Skaggs.
(footnote: 1)  Jerry was awarded a 1995 pickup valued at $9,500, farm equipment worth $50,000, two center-pivot sprinklers valued at $30,845, a horse purchased for $2,500, interests in three agricultural concerns totaling about $39,000, and two antique vehicles worth over $20,000.  Debts assigned to Jerry included a loan on the pickup of $6,100, loans from the Farm Credit Bank of $90,045, tax liability for the 1996 tax year of $73,167, credit card debt of $19,500, and the judgment in favor of Edna in the amount of $219,000.  Peggy was also awarded a judgment against Jerry in the amount of $43,867 for the amounts he was required to pay in temporary support but did not do.

Based upon the assets and liabilities for which values were ascertainable, the trial court’s division resulted in Peggy receiving approximately $97,000 in net assets while Jerry was awarded a net liability of $254,000, in addition to the money judgment of $43,867.

In its findings of fact and conclusions of law, the trial court gave ten reasons supporting the disproportionate division of the marital estate.  They were a) Jerry’s fault in the breakup of the marriage, b) his greater earning capacity, c) Peggy’s need for future support, d) her continuing health problems, e) the size and nature of Jerry’s separate estate, f) Jerry’s expected inheritance, g) the nature of the property involved in the division, h) Jerry’s failure to follow the court’s orders, i) the nature of the community debts, including income tax liability, and j) Peggy’s right of reimbursement.  Jerry does not address the factors individually, nor does he challenge that type of factor as being relevant to a division of property.  Rather, as we have noted, he simply contends that the evidence supporting those factors is not sufficient to justify the trial court’s property division.  Thus, we must consider the evidence supporting each of the trial court findings.

FAULT

When asked for an explanation of the breakup of the marriage, Peggy simply stated, “we’re two different people,” and that she was a people person and Jerry was not.  She also stated that he resented her spending time with her children and he would not accompany her on visits to her family.  There was also evidence that Jerry would hide alcohol around the house, but she did not introduce evidence of specific problems caused by his drinking.  There was also evidence of a close relationship between Peggy and another man that caused stress on the marital relationship.  Jerry introduced an assumed romantic note from Peggy to the man.  However, both Peggy and the man denied the relationship was anything other than a longstanding friendship.

EARNING CAPACITY

The findings as to Jerry’s greater earning capacity, Peggy’s need for future support and her continuing health problems are interrelated.  The evidence showed that Jerry had ceased active participation in farming, his primary occupation.  He testified that he could no longer obtain the necessary financing to do so.  He did have social security income of $1,000 per month and rental income of $500 per month from a duplex occupied by his mother, although he had not actually received any rental income for several months.  He also owned farmland that generated some unspecified income.  At the time of trial, he planned to rent the property for grazing purposes.  There was no evidence on what other job skills Jerry had or his potential income.

With regard to Peggy’s earning capacity, she received Social Security benefits of about $300 per month.  She argues on appeal that her “outdated business skills and continuing health problems precluded gainful employment.”  Her trial testimony was that she had worked in record keeping and had studied for her real estate license, but that she would not go back to either of those occupations.  This evidence would support an inference that her employment opportunities would be limited; however, there was no other evidence that she could not obtain employment because of her health.

SIZE AND NATURE OF JERRY’S SEPARATE ESTATE

The evidence of Jerry’s separate estate included 205 acres in Castro County, the duplex in Hale County, and 47 items of farm equipment which he described as being obsolete and of very little value.  The trial evidence showed that the Castro County land was valued at $159,000.  It does not show the value of the other real property. The property was used as security for loans from the Farm Credit Bank amounting to more than $60,000.  Although the evidence on Peggy’s separate property was limited, it supports the finding that the separate property only includes her right to reimbursement for contributions to their home.

JERRY’S EXPECTED INHERITANCE

The only evidence of an expected inheritance was that Jerry was an only child, which would support an inference that he had a reasonable expectation of inheriting his mother’s property.  However, Jerry averred that it was equally likely that Edna would give a substantial portion of her estate to Jerry’s children.  The evidence showed that Edna owned three tracts of irrigated farmland totaling 1100 acres, and a house was located on one of the tracts.  Edna also owned a house located near a lake in Del Rio.  Although he had seen some of his mother’s financial statements, Jerry said he did not know what other financial assets she possessed.

NATURE OF THE PROPERTY INVOLVED IN THE DIVISION

Peggy argues that the award to her of the marital residence is justified by the evidence that Jerry was living in a residence owned by his mother.  She also reasons that it was appropriate to award the farm equipment to Jerry because of his background in farming. 

FAILURE TO COMPLY WITH COURT ORDERS

Peggy argues that the evidence shows she lost the cash value of a life insurance policy because mail “disappeared” from her mailbox.  She contends the court “may attribute the loss to Jerry’s failure to adhere to a court order.”  The order in question precluded the parties from diverting mail.  However, nothing in the record supports her conclusion.

When asked about the policy, Peggy testified:

When I was staying at Matt’s,
(footnote: 2) a lot of mail was disappearing out of my mailbox.  I was not getting the things I was supposed to get and so I didn’t know what was going on. . . .  I changed my address to Matt’s address on my life insurance.  The policy lapsed because they sent it to the address and Matt had moved, but I had it in care of Matt so I’ve been fighting them ever since.

That evidence is not sufficient to support a reasonable inference that Jerry violated the court’s order by having something to do with the disappearance of the letter.  The trial court found that Jerry failed to make the support payments ordered by it but, in its final decree, included a separate recovery to Peggy for the amount of the deficiency.

THE NATURE OF THE COMMUNITY LIABILITIES

The record supports Peggy’s contention that the 1996 income tax liability is attributable to Jerry’s conduct.  Jerry testified that he ordinarily consulted with an accountant concerning tax implications before selling crops.  However, he admitted, in 1996, he “simply forgot” to consider the tax consequences of another crop sale that year.

With regard to the community debt owed to Edna, Peggy argues it was correctly awarded to Jerry because 1) the payments were not actually loans but were an advance on his inheritance, and 2) although Peggy challenged the validity of debts that were barred by limitations, Jerry acknowledged them.  However, when the trial court rendered judgment in favor of Edna, it resolved any factual dispute as to the nature of the payments.  Because the record does not show that either party challenged the judgment, we must, therefore, consider the judgment as a valid community debt.  Indeed, when being examined about the payments, Peggy was asked, “[a]re there any of them (the payments) that you dispute that the money was loaned to you by Mrs. [Edna] Young, to you and Jerry?”  She responded, “I’ve seen the figures, yes, if that’s what you mean, but I’ve never been given a description of anything.”  The context of her testimony indicates that by her use of the word “description,” she meant a description of the purpose of the loans.

In her discussion of this issue, Peggy does not address the $90,000 liability to the Farm Credit Bank other than her statements that Jerry had greater earning capacity.  The record itself does not clearly show how the proceeds of the loans were used, but it does show they are secured by Jerry’s separate real property.    

PEGGY’S RIGHT TO REIMBURSEMENT

There was undisputed evidence that $20,000 of Peggy’s separate property was used to purchase the community property residence.  There was also evidence that a classic Ford Model A car was Jerry’s separate property, but had almost no value before the marriage.  Its value was enhanced by being rebuilt by Jerry during the marriage using community assets.  The court treated the vehicle as community property and awarded it to Jerry.  Jerry has not challenged the characterization as community property.   

In summary, the record does not support the finding of fact that a disproportionate division is supported by fault in the breakup of the marriage, Jerry’s failure to follow court orders, or the nature of the loans from the Farm Credit Bank.  The evidence gives some support to the findings of Jerry’s greater earning capacity and Peggy’s need for support.  It gives significant support for the findings as to Jerry’s greater separate property estate, expected inheritance, and the nature of the community assets.  Peggy’s right of reimbursement for contribution to the purchase of the couple’s home is undisputed and we have accounted for that right by only including the community property interest in the house in considering the assets awarded to her.

The more difficult determination is the degree to which the record supports the allocation of community liabilities.  In his testimony, Jerry admitted he bears responsibility for failing to plan for the 1996 tax liability.  The record is simply incomplete on the nature of the loans from the Farm Credit Bank and, under this record, their allocation to Jerry must be supported by other factors.  Although the evidence considering the debt to Edna might otherwise support a finding that the payments creating the debt were gifts rather than loans, that question is foreclosed to us by the trial court’s finding that they were loans by its rendition of judgment for Edna.

Jerry cites cases in which our sister courts have found much less disparate divisions to have been improper.  These include 
Zamora v. Zamora
, 611 S. W. 2d 660 (Tex.Civ. App.--Corpus Christi 1980, no writ).  In that case, the court held that a disposition of community property resulting in a net award of $27,700 to the wife and an unspecified negative award to the husband was “grossly unequal” and an abuse of discretion, even though the husband had the greater income.  In 
Welch v. Welch
, 694 S.W.2d 374 (Tex. App.--Houston [14
th
 Dist.] 1985, no writ), the trial court’s division of the community estate resulted in the wife receiving $93,000 and the husband receiving net liabilities totaling $23,000.  The evidence showed the husband had a master’s degree and operated a struggling business and the wife had income of $1,200 per month.  
Id. 
at 376
.
  The appellate court held there was a gross disparity between the awards and the division was an abuse of discretion.  
Id.

In response, Peggy cites two cases which, she argues, support a disparate division of the type before us.  
Johnson v. Johnson
, 948 S.W.2d 835, 837 (Tex.App.--San Antonio 1997, writ denied), involved a claim of inequitable division because the trial court awarded the couple’s vehicle to the wife, but the debt was awarded to the husband which, under the evidence, could only be satisfied out of the husband’s property.  
Id.
 at 837.  In affirming that award, the court noted that the wife had entered into the marriage with a car, which had been sold by the husband without the wife’s consent after the divorce had been filed, and that the husband had a monthly income of $10,000 while the wife had no income.  
Id. 
at 836.
 
 Those facts distinguish 
Johnson
 from this case.

Peggy also cites 
Abernathy v. Fehlis,
 911 S.W.2d 845 (Tex.App.--Austin 1995, no writ), in which the court affirmed an award that resulted in the wife receiving $52,000 of community property, primarily a $42,000 house, while the husband was assigned property and liabilities resulting in a net liability to him of $35,589.  However, $43,000 of the debt assigned to the husband was a note to his father, which was later assigned to the husband as his separate property by the executor of the father’s estate.  
Id
. at 846.  In considering those facts, the appellate court commented that the proposition that the husband was required to pay that debt was a “patent fiction” because “he cannot enforce any obligation against himself.”  
Id
. at 847.  That being true, the appellate court concluded the division was sustainable.

Considering the facts in the case before us, even discounting the 1996 tax debt as attributable to Jerry’s error, the net award to him is approximately a negative $180,000, while Peggy was awarded almost $100,000 in net assets.  Considering the authorities and the evidence we have discussed, even under the standard we must apply, we hold the trial court erred in its division of the community estate.  We must, therefore, sustain Jerry’s first point and reverse the judgment of the trial court giving rise to this appeal and remand that portion of the cause to the trial court.

Because the question may likely arise again after our remand retrial on the property division, we will briefly address Jerry’s second point of error.  In that point, he argues that the imposition of a net liability upon him results in an impermissible divestiture of his separate property.  In advancing that proposition, he relies on the general rule explicated in 
Cameron v. Cameron, 
641 S.W.2d 210, 215 (Tex. 1982
)
, that a court may not divest a spouse of separate property on divorce.  However, that court did not address the specific question as to whether an allocation of debt in excess of community property amounts to an impermissible divestiture of separate property.  However, in the 
Johnson
 case, the San Antonio court was presented with that very question and decided it adversely to Jerry’s position.  948 S.W.2d at 838.  We agree with our sister court that in many instances, a couple’s debts may exceed the value of their community assets and in those instances, the payment of the community debts after a divorce will always require the use of separate funds.  Nevertheless, those debts should be paid and, if the parties cannot agree as to their payment, it is the duty of a trial court to enter an appropriate order.  Thus, a proper allocation of community debts does not cross the bar of the rule stated in 
Cameron.  
Jerry’s second point is overruled.

In his third point, Jerry challenges the separate award of $43,800 to Peggy for his failure to pay the temporary support payments ordered by the trial court.  In doing so, he contends the evidence was both legally and factually insufficient to sustain that award in that the temporary orders did not actually require him to make any payments to Peggy, but rather only required him to “assume responsibility” for specified expenses totaling $2,788 per month.  Thus, he reasons, he was only required to indemnify Peggy for expenses she actually incurred and the evidence does not establish that she incurred the full expenses during the temporary support periods.  However, Jerry made no such objection to the trial court and thus failed to preserve the question for our review.  Tex. R. App. P. 33.1.

The portion of the trial court’s judgment dividing the community property is reversed and remanded for a new trial, and in all other respects the judgment is affirmed. 

John T. Boyd

 Chief Justice

Do not publish.

 

FOOTNOTES
1:
The evidence showed John Skaggs provided financial support to Peggy while the divorce was pending.  The amount of the support was not established.

2:
Although the record is not clear, apparently Matt is Peggy’s son.