NO. 07-02-0169-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 26, 2002



______________________________




TEXAS WORKERS' COMPENSATION COMMISSION, APPELLANT



V.



TEXAS WORKERS' COMPENSATION INSURANCE FUND, APPELLEE




_________________________________



FROM THE 127TH DISTRICT COURT OF HARRIS COUNTY;



NO. 98-39523; HONORABLE SHAROLYN WOOD, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ORDER


 Pending before this Court is an agreed motion to correct the style of this appeal. 
The Texas Workers' Compensation Commission (TWCC) perfected an appeal to the
Fourteenth Court of Appeals from the trial court's judgment denying its motion for summary
judgment and instead granting the motion for summary judgment of the Texas Workers'
Compensation Insurance Fund (TWCIF). The district court case was styled Texas
Workers' Compensation Commission v. Glen Everett, Mr. Everett being the real party in
interest and TWCC being the intervenor. The Fourteenth Court of Appeals docketed the
appeal with the same style as the district court case. However, the docketing statement
designates TWCC as appellant and TWCIF as appellee. On April 15, 2002, the parties
were notified by letter that by order of the Supreme Court the appeal was transferred to this
Court. We hereby grant the motion and order that the style of this appeal be changed to
Texas Workers' Compensation Commission, Appellant v. Texas Workers' Compensation
Insurance Fund, Appellee.

 It is so ordered.

 Per Curiam

Do not publish. 



at he was the one allegedly
guilty of cruel treatment. In October 1996, Jerry's mother, Edna Young (Edna) intervened
in the suit asserting that she had loaned the parties $242,939 and that they owed her
$24,000 rent. Edna alleged that she had made a series of 12 loans from January 1985,
through December 1994. In November 1996, the trial judge signed agreed temporary
orders requiring both parties to file inventories and requiring Jerry to pay specified monthly
expenses of Peggy totaling $2,788.35. In October 1998, Peggy alleged that Jerry had
failed to make the monthly payments and sought enforcement of the temporary support
order. On December 8, 1998, the case was tried to the bench and, on October 15, 1999,
a judgment was signed dissolving the marriage and dividing the property.

 On December 28, 1999, the trial court granted a partial new trial limited to the issues
concerning the proper division of the assets and liabilities between the parties, based on
the record before the court at the conclusion of the trial which commenced on December
8, 1998. On April 4, 2001, the court handed down its amended divorce decree containing
the property division giving rise to this appeal. Included in the property division was a
recitation that the court had rendered judgment on October 15, 1999, in favor of Edna in
the amount of $219,500, which was to be paid by Jerry. In response to Jerry's request, the
trial court entered findings of fact and conclusions of law. Jerry now presents three points
error. In those points, he asserts 1) the division of assets and liabilities is manifestly unjust,
2) the decree improperly divests appellant of his separate property, and 3) there is legally
and factually insufficient evidence supporting a money judgment in favor of Peggy for
unpaid temporary support.

 As we noted, in his first point, Jerry challenges the trial court's division of the
community assets and liabilities. Peggy initially responds that Jerry failed to preserve any
error in this regard because Jerry, "while acknowledging that many circumstances may
provide a basis for justifying a court's division of a marital estate, failed to attack most of
the factors found (in the findings of fact) as justification for the disproportionate division at
issue." However, because Jerry specifically addressed the disproportionate division of the
community estate in his motion for new trial, Peggy's waiver argument is without merit. In
a divorce proceeding, a trial court is required to order a division of the parties' estate in a
manner it deems just and right. See Tex. Fam. Code Ann. § 7.001 (Vernon 1998). The
ultimate and controlling issue as to the property division is whether it is just and right. Hill
v. Hill, 971 S.W.2d 153, 155 (Tex.App.--Amarillo 1998, no pet.). The ultimate or controlling
issue as to the property division is whether it is just and right and the values of the property
being divided, though related to the ultimate issue, is not a controlling issue. Hill v. Hill,
971 S.W.2d 153, 155 (Tex.App.--Amarillo 1998, no pet.); Rafferty v. Finstad, 903 S.W.2d
374, 376 (Tex.App.--Houston [1st Dist.] 1995, writ denied).

 The trial court is afforded wide discretion in dividing the marital estate and its
discretion will not be disturbed on appeal unless a clear abuse of discretion is shown. 
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Murff v. Murff, 615 S.W.2d 696, 698
(Tex. 1981). The community property need not be equally apportioned between the
parties. See id. 698-99. In exercising its discretion, the trial court may consider many
factors. For example, the trial court may consider a spouse's dissipation of the community
estate, as well as the spouse's misuse of community property. Vannerson v. Vannerson,
857 S.W.2d 659, 669 (Tex.App--Houston [1st Dist.] 1993, writ denied); Reaney v. Reaney,
505 S.W.2d 338, 340 (Tex.Civ.App.--Dallas 1974, no writ). A disproportionate award may
also be considered when a spouse conceals community assets. Rafdi v. Rafdi, 718
S.W.2d 43, 45 (Tex.App.--Dallas 1988, no writ). A spouse's failure to make court-ordered
temporary support payments or failure to obey the court's temporary order restricting the
use of community assets may also justify a disproportionate award from the community
estate. See Jones v. Jones, 699 S.W.2d 583, 585 (Tex.App.--Texarkana 1985, no writ). 
Income tax liability may also be considered in dividing the community estate. See Baccus
v. Baccus, 808 S.W.2d 694, 700 (Tex.App.--Beaumont 1991, no writ).

 The parties do not dispute the trial court's characterization of the property at issue,
but do assign different values to specific items and dispute the character of money
received from Edna. In its final decree, the trial court awarded the following property to
Peggy: their house in Plainview valued at $126,000, most household furnishings, a bank
account containing $350, and a 1989 Oldsmobile with an approximate value of $2,500. 
The court imposed the following liabilities on her: a $5,512 mortgage on the house,
property taxes of $3,215, various credit card accounts totaling $3,629, and any obligation
that might be owed to John Skaggs. (1) Jerry was awarded a 1995 pickup valued at $9,500,
farm equipment worth $50,000, two center-pivot sprinklers valued at $30,845, a horse
purchased for $2,500, interests in three agricultural concerns totaling about $39,000, and
two antique vehicles worth over $20,000. Debts assigned to Jerry included a loan on the
pickup of $6,100, loans from the Farm Credit Bank of $90,045, tax liability for the 1996 tax
year of $73,167, credit card debt of $19,500, and the judgment in favor of Edna in the
amount of $219,000. Peggy was also awarded a judgment against Jerry in the amount of
$43,867 for the amounts he was required to pay in temporary support but did not do.

 Based upon the assets and liabilities for which values were ascertainable, the trial
court's division resulted in Peggy receiving approximately $97,000 in net assets while Jerry
was awarded a net liability of $254,000, in addition to the money judgment of $43,867.

 In its findings of fact and conclusions of law, the trial court gave ten reasons
supporting the disproportionate division of the marital estate. They were a) Jerry's fault in
the breakup of the marriage, b) his greater earning capacity, c) Peggy's need for future
support, d) her continuing health problems, e) the size and nature of Jerry's separate
estate, f) Jerry's expected inheritance, g) the nature of the property involved in the division,
h) Jerry's failure to follow the court's orders, i) the nature of the community debts, including
income tax liability, and j) Peggy's right of reimbursement. Jerry does not address the
factors individually, nor does he challenge that type of factor as being relevant to a division
of property. Rather, as we have noted, he simply contends that the evidence supporting
those factors is not sufficient to justify the trial court's property division. Thus, we must
consider the evidence supporting each of the trial court findings.

FAULT

 When asked for an explanation of the breakup of the marriage, Peggy simply stated,
"we're two different people," and that she was a people person and Jerry was not. She
also stated that he resented her spending time with her children and he would not
accompany her on visits to her family. There was also evidence that Jerry would hide
alcohol around the house, but she did not introduce evidence of specific problems caused
by his drinking. There was also evidence of a close relationship between Peggy and
another man that caused stress on the marital relationship. Jerry introduced an assumed
romantic note from Peggy to the man. However, both Peggy and the man denied the
relationship was anything other than a longstanding friendship.

EARNING CAPACITY

 The findings as to Jerry's greater earning capacity, Peggy's need for future support
and her continuing health problems are interrelated. The evidence showed that Jerry had
ceased active participation in farming, his primary occupation. He testified that he could
no longer obtain the necessary financing to do so. He did have social security income of
$1,000 per month and rental income of $500 per month from a duplex occupied by his
mother, although he had not actually received any rental income for several months. He
also owned farmland that generated some unspecified income. At the time of trial, he
planned to rent the property for grazing purposes. There was no evidence on what other
job skills Jerry had or his potential income.

 With regard to Peggy's earning capacity, she received Social Security benefits of
about $300 per month. She argues on appeal that her "outdated business skills and
continuing health problems precluded gainful employment." Her trial testimony was that
she had worked in record keeping and had studied for her real estate license, but that she
would not go back to either of those occupations. This evidence would support an
inference that her employment opportunities would be limited; however, there was no other
evidence that she could not obtain employment because of her health.

SIZE AND NATURE OF JERRY'S SEPARATE ESTATE

 The evidence of Jerry's separate estate included 205 acres in Castro County, the
duplex in Hale County, and 47 items of farm equipment which he described as being
obsolete and of very little value. The trial evidence showed that the Castro County land
was valued at $159,000. It does not show the value of the other real property. The
property was used as security for loans from the Farm Credit Bank amounting to more than
$60,000. Although the evidence on Peggy's separate property was limited, it supports the
finding that the separate property only includes her right to reimbursement for contributions
to their home.

JERRY'S EXPECTED INHERITANCE

 The only evidence of an expected inheritance was that Jerry was an only child,
which would support an inference that he had a reasonable expectation of inheriting his
mother's property. However, Jerry averred that it was equally likely that Edna would give
a substantial portion of her estate to Jerry's children. The evidence showed that Edna
owned three tracts of irrigated farmland totaling 1100 acres, and a house was located on
one of the tracts. Edna also owned a house located near a lake in Del Rio. Although he
had seen some of his mother's financial statements, Jerry said he did not know what other
financial assets she possessed.

NATURE OF THE PROPERTY INVOLVED IN THE DIVISION

 Peggy argues that the award to her of the marital residence is justified by the
evidence that Jerry was living in a residence owned by his mother. She also reasons that
it was appropriate to award the farm equipment to Jerry because of his background in
farming. 

FAILURE TO COMPLY WITH COURT ORDERS

 Peggy argues that the evidence shows she lost the cash value of a life insurance
policy because mail "disappeared" from her mailbox. She contends the court "may
attribute the loss to Jerry's failure to adhere to a court order." The order in question
precluded the parties from diverting mail. However, nothing in the record supports her
conclusion.

 When asked about the policy, Peggy testified:

 When I was staying at Matt's, (2) a lot of mail was disappearing out of my
mailbox. I was not getting the things I was supposed to get and so I didn't
know what was going on. . . . I changed my address to Matt's address on my
life insurance. The policy lapsed because they sent it to the address and
Matt had moved, but I had it in care of Matt so I've been fighting them ever
since.


That evidence is not sufficient to support a reasonable inference that Jerry violated the
court's order by having something to do with the disappearance of the letter. The trial court
found that Jerry failed to make the support payments ordered by it but, in its final decree,
included a separate recovery to Peggy for the amount of the deficiency.

THE NATURE OF THE COMMUNITY LIABILITIES

 The record supports Peggy's contention that the 1996 income tax liability is
attributable to Jerry's conduct. Jerry testified that he ordinarily consulted with an
accountant concerning tax implications before selling crops. However, he admitted, in
1996, he "simply forgot" to consider the tax consequences of another crop sale that year.

 With regard to the community debt owed to Edna, Peggy argues it was correctly
awarded to Jerry because 1) the payments were not actually loans but were an advance
on his inheritance, and 2) although Peggy challenged the validity of debts that were barred
by limitations, Jerry acknowledged them. However, when the trial court rendered judgment
in favor of Edna, it resolved any factual dispute as to the nature of the payments. Because
the record does not show that either party challenged the judgment, we must, therefore,
consider the judgment as a valid community debt. Indeed, when being examined about
the payments, Peggy was asked, "[a]re there any of them (the payments) that you dispute
that the money was loaned to you by Mrs. [Edna] Young, to you and Jerry?" She
responded, "I've seen the figures, yes, if that's what you mean, but I've never been given
a description of anything." The context of her testimony indicates that by her use of the
word "description," she meant a description of the purpose of the loans.

 In her discussion of this issue, Peggy does not address the $90,000 liability to the
Farm Credit Bank other than her statements that Jerry had greater earning capacity. The
record itself does not clearly show how the proceeds of the loans were used, but it does
show they are secured by Jerry's separate real property. 

PEGGY'S RIGHT TO REIMBURSEMENT

 There was undisputed evidence that $20,000 of Peggy's separate property was
used to purchase the community property residence. There was also evidence that a
classic Ford Model A car was Jerry's separate property, but had almost no value before
the marriage. Its value was enhanced by being rebuilt by Jerry during the marriage using
community assets. The court treated the vehicle as community property and awarded it
to Jerry. Jerry has not challenged the characterization as community property. 

 In summary, the record does not support the finding of fact that a disproportionate
division is supported by fault in the breakup of the marriage, Jerry's failure to follow court
orders, or the nature of the loans from the Farm Credit Bank. The evidence gives some
support to the findings of Jerry's greater earning capacity and Peggy's need for support. 
It gives significant support for the findings as to Jerry's greater separate property estate,
expected inheritance, and the nature of the community assets. Peggy's right of
reimbursement for contribution to the purchase of the couple's home is undisputed and we
have accounted for that right by only including the community property interest in the house
in considering the assets awarded to her.

 The more difficult determination is the degree to which the record supports the
allocation of community liabilities. In his testimony, Jerry admitted he bears responsibility
for failing to plan for the 1996 tax liability. The record is simply incomplete on the nature
of the loans from the Farm Credit Bank and, under this record, their allocation to Jerry must
be supported by other factors. Although the evidence considering the debt to Edna might
otherwise support a finding that the payments creating the debt were gifts rather than
loans, that question is foreclosed to us by the trial court's finding that they were loans by
its rendition of judgment for Edna.

 Jerry cites cases in which our sister courts have found much less disparate divisions
to have been improper. These include Zamora v. Zamora, 611 S. W. 2d 660 (Tex.Civ.
App.--Corpus Christi 1980, no writ). In that case, the court held that a disposition of
community property resulting in a net award of $27,700 to the wife and an unspecified
negative award to the husband was "grossly unequal" and an abuse of discretion, even
though the husband had the greater income. In Welch v. Welch, 694 S.W.2d 374 (Tex.
App.--Houston [14th Dist.] 1985, no writ), the trial court's division of the community estate
resulted in the wife receiving $93,000 and the husband receiving net liabilities totaling
$23,000. The evidence showed the husband had a master's degree and operated a
struggling business and the wife had income of $1,200 per month. Id. at 376. The
appellate court held there was a gross disparity between the awards and the division was
an abuse of discretion. Id.

 In response, Peggy cites two cases which, she argues, support a disparate division
of the type before us. Johnson v. Johnson, 948 S.W.2d 835, 837 (Tex.App.--San Antonio
1997, writ denied), involved a claim of inequitable division because the trial court awarded
the couple's vehicle to the wife, but the debt was awarded to the husband which, under the
evidence, could only be satisfied out of the husband's property. Id. at 837. In affirming
that award, the court noted that the wife had entered into the marriage with a car, which
had been sold by the husband without the wife's consent after the divorce had been filed,
and that the husband had a monthly income of $10,000 while the wife had no income. Id.
at 836. Those facts distinguish Johnson from this case.

 Peggy also cites Abernathy v. Fehlis, 911 S.W.2d 845 (Tex.App.--Austin 1995, no
writ), in which the court affirmed an award that resulted in the wife receiving $52,000 of
community property, primarily a $42,000 house, while the husband was assigned property
and liabilities resulting in a net liability to him of $35,589. However, $43,000 of the debt
assigned to the husband was a note to his father, which was later assigned to the husband
as his separate property by the executor of the father's estate. Id. at 846. In considering
those facts, the appellate court commented that the proposition that the husband was
required to pay that debt was a "patent fiction" because "he cannot enforce any obligation
against himself." Id. at 847. That being true, the appellate court concluded the division
was sustainable.

 Considering the facts in the case before us, even discounting the 1996 tax debt as
attributable to Jerry's error, the net award to him is approximately a negative $180,000,
while Peggy was awarded almost $100,000 in net assets. Considering the authorities and
the evidence we have discussed, even under the standard we must apply, we hold the trial
court erred in its division of the community estate. We must, therefore, sustain Jerry's first
point and reverse the judgment of the trial court giving rise to this appeal and remand that
portion of the cause to the trial court.

 Because the question may likely arise again after our remand retrial on the property
division, we will briefly address Jerry's second point of error. In that point, he argues that
the imposition of a net liability upon him results in an impermissible divestiture of his
separate property. In advancing that proposition, he relies on the general rule explicated
in Cameron v. Cameron, 641 S.W.2d 210, 215 (Tex. 1982), that a court may not divest a
spouse of separate property on divorce. However, that court did not address the specific
question as to whether an allocation of debt in excess of community property amounts to
an impermissible divestiture of separate property. However, in the Johnson case, the San
Antonio court was presented with that very question and decided it adversely to Jerry's
position. 948 S.W.2d at 838. We agree with our sister court that in many instances, a
couple's debts may exceed the value of their community assets and in those instances, the
payment of the community debts after a divorce will always require the use of separate
funds. Nevertheless, those debts should be paid and, if the parties cannot agree as to
their payment, it is the duty of a trial court to enter an appropriate order. Thus, a proper
allocation of community debts does not cross the bar of the rule stated in Cameron. Jerry's
second point is overruled.

 In his third point, Jerry challenges the separate award of $43,800 to Peggy for his
failure to pay the temporary support payments ordered by the trial court. In doing so, he
contends the evidence was both legally and factually insufficient to sustain that award in
that the temporary orders did not actually require him to make any payments to Peggy, but
rather only required him to "assume responsibility" for specified expenses totaling $2,788
per month. Thus, he reasons, he was only required to indemnify Peggy for expenses she
actually incurred and the evidence does not establish that she incurred the full expenses
during the temporary support periods. However, Jerry made no such objection to the trial
court and thus failed to preserve the question for our review. Tex. R. App. P. 33.1.

 The portion of the trial court's judgment dividing the community property is reversed
and remanded for a new trial, and in all other respects the judgment is affirmed. 


 John T. Boyd

 Chief Justice

Do not publish.



 
1. The evidence showed John Skaggs provided financial support to Peggy while the
divorce was pending. The amount of the support was not established.
2. Although the record is not clear, apparently Matt is Peggy's son.